# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH DAKOTA – WESTERN DIVISION

| | |
|---|---|
| RUTH ESPERANCE ) | |
| 14008 Golf Course Road ) | |
| Rapid City, SD 57702, ) | |
|                                    ) | |
|         Plaintiff, ) | |
|                                    ) | |
|         v.                      ) | Civil Action No.  5:20-cv-5055 |
|                                    ) | |
| SONNY PERDUE        ) | |
| Secretary of Agriculture ) | **COMPLAINT** |
| U.S. Department of Agriculture ) | |
| 1400 Independence Ave., S.W. ) | |
| Washington, DC 20250, ) | |
|                                    ) | |
|         Defendant. ) | |
|                                    ) | |

Plaintiff Ruth Esperance ("Ms. Esperance"), by and through undersigned counsel, hereby submits the following Complaint and in support thereof alleges the following:

1.  This is an action brought by Plaintiff Ruth Esperance against Defendant United States Department of Agriculture ("USDA"),[1] pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. (hereinafter "Title VII").  Ms. Esperance seeks all remedies and relief available under Title VII for harms caused to Ms. Esperance by Defendant's unlawful discrimination on the basis of her gender (female) when Ms. Esperance *inter alia* was subjected to a hostile work environment, was excluded from working on special assignments that were given to her male colleagues, was excluded from management's communications with her male colleagues, was subjected to a verbal threat, had her ideas routinely dismissed in meetings by male managers, and was ultimately involuntarily reassigned from her District Ranger position to a position with decreased authority and duties (which is a constructive demotion).  Ms. Esperance

---

[1] Defendant Sonny Perdue is named as the defendant in his official capacity only.

requests as relief: injunctive relief, including reinstatement to the District Ranger position that she held before October 26, 2018 and appropriate record correction regarding this reinstatement and negative statements made about Ms. Esperance concerning her reassignment; compensatory damages (to the maximum allowed by law); damages for loss of pay; attorney fees, costs, and expenses; and such other relief as the Court deems just and appropriate in order to fully remedy Defendant's unlawful acts.

## PARTIES

2.Plaintiff Ruth Esperance, a United States citizen, is a federal employee with over 29 years of service with the USDA.  From 2012 to late 2018, she worked as the District Ranger for the Mystic District of the Black Hills National Forest in South Dakota, within the USDA's Forest Service, and afterwards has worked for the Forest Service as a Regional Planner based in Rapids City, South Dakota.  Ms. Esperance resides at 14008 Golf Course Road, Rapid City, South Dakota 57702.

3.Defendant Sonny Perdue is the Secretary of the United States Department of Agriculture (USDA), which is the Defendant in this case.  Secretary Perdue is sued in his official capacity only.  Defendant's address is 1400 Independence Ave., S.W., Washington, DC 20250.

## JURISDICTION AND VENUE

4.This Court has jurisdiction over this Complaint because it presents a question of federal law. *See* 28 U.S.C. § 1331.

5.Specifically, this Court has jurisdiction over this Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(3).

6.This Court is the proper venue pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).  All of the discriminatory acts took place in South Dakota.

7. The facts underlying this Complaint were developed, in part, through an administrative Equal Employment Opportunity ("EEO") complaint, which Ms. Esperance timely initiated and has fully exhausted.

8. Ms. Esperance's formal EEO complaint that gave rise to this case (FS-2019-00100) was timely filed on December 22, 2018. Ms. Esperance subsequently requested to amend her EEO complaint on February 22, 2019. The Report of Investigation ("ROI") was received by Ms. Esperance on July 30, 2019, and Ms. Esperance timely requested a hearing with the Equal Employment Opportunity Commission ("EEOC") on August 7, 2019, i.e., within 30 days of receipt, in accordance with EEOC procedure. After the USDA issued a final decision on June 4, 2020, Ms. Esperance is timely filing the instant Complaint within 90 days of receipt of this Decision. *See* 42 U.S.C. § 2000e-16(c).

## FACTS

9. Ms. Esperance incorporates the preceding paragraphs as if fully set forth herein.

10. Ms. Esperance has been faithfully employed by the USDA since on or about September 7, 1989, for a total of 29 years of service. In 2006, Ms. Esperance became a District Ranger in USDA's Forest Service in Wyoming and then in 2012 moved to South Dakota to work as the District Ranger for the Mystic District of the Black Hills National Forest, within USDA's Forest Service.

11. For approximately 12 years, Ms. Esperance diligently served as a District Ranger (Line Officer), a leadership role within her unit.

12. In her time with the USDA, Ms. Esperance has been acknowledged for her dedicated service through a number of awards, including the Heroism Award (Group) in 2002 for her unit's support as an Incident Management Team on September 11, 2001; the R2 Regional

3

Forester's Award for work done on a timber project in Wyoming; as well as a number of Merit Awards (cash bonuses).

13. Throughout her nearly 30-year career at USDA, Ms. Esperance has not had any discipline or adverse actions.

14. Upon information and belief, Ms. Esperance has been regarded by her employees as one of the best District Rangers they ever had.

15. Ms. Esperance is extremely well-versed in the USDA's policy regarding workplace harassment. During the entirety of her career, Ms. Esperance kept up with all required training regarding EEO/diversity/inclusion and the "No Fear Act." Moreover, Ms. Esperance applied to and was accepted into the National Cadre for Resolving Officials to represent the Chief of the Forest Service on working to resolve EEO complaints. Ms. Esperance's service required week-long training sessions regarding the EEO process, working alongside the Washington Office's Civil Rights group, and ensuring a safe environment for the workforce that is free of fear, intimidation, discrimination, and sexual harassment. Ms. Esperance fulfilled this role for at least three years.

16. During the relevant time period for this case, Ms. Esperance's direct supervisor was Mark Van Every, who served as Forest Supervisor, and her second-level supervisor was Brian Ferebee, who served as Regional Forester. Ms. Esperance was assigned to Region 2, Black Hills National Forest, Mystic Ranger District, within USDA's Forest Service.

17. Mr. Van Every and Mr. Ferebee have engaged in acts of gender discrimination against female employees at USDA, including but not limited to, Ms. Esperance.

18. Since Mr. Van Every took over as Forest Supervisor, there was a conspicuous decline in female employees on the Forest Leadership Team ("FLT").

19. In or around 2015 to 2016, the FLT consisted of about 50% women and 50% men. Under Mr. Van Every's supervision from 2017-2018, the FLT consisted of about 10% women and 90% men.

20. As the Forest Supervisor, Mr. Van Every had direct influence and control over the make-up of the FLT. Mr. Van Every removed women from the FLT, and other women left the forest as a result of their concerns regarding Mr. Van Every's behavior towards women.

21. From approximately mid-2017 to October 2018, Mr. Van Every communicated more with Ms. Esperance's male co-workers than with her or other female employees before meetings and during breaks. Mr. Van Every also communicated much more frequently with male members of the FLT by phone than with Ms. Esperance and other female members of the FLT, even though the conversations with male employees regarded much more minor issues than topics for which Ms. Esperance would have been communicating with Mr. Van Every.

22. Upon information and belief, Mr. Van Every visited Ms. Esperance's facility on numerous occasions without informing or meeting with Ms. Esperance.

23. Mr. Van Every routinely dismissed the concerns and ideas of Ms. Esperance and her female colleagues while being receptive to the concerns and ideas of Ms. Esperance's male co-workers.

24. In or about October 2018, during a FLT meeting, Ms. Esperance suggested that the Agency identify a volume of timber sales which would trigger development of a timber strike team. This response was completely dismissed and not discussed; Mr. Van Every did not even acknowledge it. Later, outside the meeting, Mr. Van Every accepted the idea and made it a new job responsibility for Ms. Esperance by including it on a list of duties dated on or about October 30, 2018, reading "work with Brian Jackson to critical target trigger points for the establishment of a Forest timber strike team."

25. Mr. Van Every disregarded concerns raised by Ms. Esperance regarding a plan to use seasonal employees in a manner which likely violated policy and regulations. Mr. Van Every cut off additional conversation after Ms. Esperance presented her thoughts to him.

26. Mr. Van Every refused to fill the position of NEPA Planner, a subordinate position to that of Ms. Esperance, which was vital to Ms. Esperance's success. Ms. Esperance raised the issue during the October 2018 FLT meeting and was ignored by Mr. Van Every. Ms. Esperance later learned that Mr. Van Every immediately made the approval to fill the NEPA Planner position after she was reassigned.

27. In or around May or June 2018, Mr. Van Every unnecessarily re-wrote Ms. Esperance's team's document concerning non-motorized trails and mountain bikes despite the document being properly prepared as required and in accordance with Mr. Van Every's instructions. Ms. Esperance and her team worked diligently on the issue for over two years, including extensive work with internal and external shareholders and working countless extra hours to make sure the document was complete, exhaustive, and did not require much editing. Mr. Van Every made major changes to the document, removed the kinds of examples he previously told Ms. Esperance had to be included, and made other edits wholly inconsistent with the instructions he provided to Ms. Esperance.

28. Mr. Van Every avoided hearing proposals from Ms. Esperance regarding the Pactola Visitor Center. Although Ms. Esperance reserved time to meet with Mr. Van Every, he pushed back this appointment until after Ms. Esperance's reassignment, and this meeting never occurred.

29. Mr. Van Every was unwilling to consider Ms. Esperance's input regarding the State Historic Preservation Office ("SHPO"). Ms. Esperance researched what was legally required, worked with employees to understand what they felt was required and why, read books on the

topic, and attended a class to be as informed as possible. Ms. Esperance told Mr. Van Every on several occasions in meetings and in emails that Ms. Esperance had interest and knowledge on the subject and wanted to help identify areas for improvement, but Mr. Van Every never allowed Ms. Esperance to provide input.

30. As a result of Ms. Esperance's concerns and ideas being ignored, Ms. Esperance's ability to succeed in her District Ranger position was immensely impaired as well as her job being much more difficult to complete. Despite having several years of excellent work and positive performance reviews, Mr. Van Every marginalized Ms. Esperance and impeded her efforts to do her job.

31. In 2017 to 2018, on multiple occasions, Ms. Esperance's male co-workers on the FLT were given special assignments that were not offered to Ms. Esperance or any other female employee, including Tracey Anderson.

32. In or about 2017, Mr. Van Every selected Steve Kozel and Mr. Krueger for permanent fire hire despite Ms. Esperance's desire for this opportunity.

33. In or about 2018, Mr. Van Every selected Mike Gosse and Todd Pechota for temporary fire hire despite Ms. Esperance's desire for this opportunity.

34. In or about 2018, Mr. Van Every again selected Mr. Kozel and Mr. Krueger for permanent fire hire despite Ms. Esperance's desire for this opportunity.

35. In or about April 2018, Ms. Esperance was denied a detail to Mr. Krueger's Deputy Forest Supervisor position. Instead, Mr. Van Every called one of Ms. Esperance's male co-workers to seek his interest, ultimately offering the detail to another male co-worker, Mr. Pechota, despite Ms. Esperance's request for that detail, Ms. Esperance's superior qualifications, and the fact that Mr. Pechota was largely unavailable for the detail due to other obligations.

36. In or about March 2018, Mr. Van Every selected Mr. Kozel, a male District Ranger from Spearfish, South Dakota (Northern Hills Ranger District) to facilitate a call with internal and external stakeholders on a NEPA EADM conference call. This happened notwithstanding the fact that the external stakeholders who were on the call were invited to be physically present in Ms. Esperance's office during the call, Ms. Esperance was fully familiar with the subject matter and able to facilitate the call, and Mr. Kozel had to travel approximately three hours to be present at Ms. Esperance's office.

37. In or about August 2018, Mr. Van Every selected Mr. Krueger and Mr. Gosse to serve on a committee regarding Off Highway Vehicle ("OHV") use concerns. Ms. Esperance has significant experience with OHV use and had the most miles on her unit. Mr. Gosse, on the other hand, only oversaw a small district with an OHV use program managed by the State of Wyoming and consequently was far less qualified than Ms. Esperance for this committee. Moreover, there was not limited membership on this committee, meaning Ms. Esperance could have served alongside Mr. Krueger and Mr. Gosse if Mr. Van Every chose to appoint them all.

38. In or about June 2018, Mr. Van Every selected Ralph Adam and Mr. Kozel to the committee working on trail permit fee increases, even though Ms. Esperance was equally or more qualified to serve on this committee compared to Mr. Kozel. Again, there was not limited membership on this committee.

39. In or about August 2018, Mr. Van Every selected Mr. Jackson to summarize the Star of the West project at the FLT meeting, even though this project was entirely developed by Ms. Esperance and her fuels group and spearheaded by Ms. Esperance and her Fire Management Officer. Again, there was not limited membership on this committee.

40. In or about February 2018, Mr. Van Every selected Todd Butler and Mr. Gosse to serve on the committee responsible for developing ideas to make improvements based on the

results of the Employee Viewpoint Survey ("FEVS"), despite Ms. Esperance expressing on several occasions her interest and passion on workplace culture, health, and safety. Again, there was not limited membership on this committee.

41. In or about August 2018, Ms. Esperance requested to be on the Regional Civil Rights Action Team ("CRAT"), but her request was denied by management.

42. On or about October 26, 2018, Mr. Van Every issued a Reassignment Memo ("the Memo"), reassigning Ms. Esperance from her position as the District Ranger, GS-13, in Mystic, South Dakota to the position of Special Assistant to the Forest Supervisor, GS-13, in Custer, South Dakota. Within the Memo, Mr. Van Every informed Ms. Esperance that she had 30 to 45 days to find her own position, and that position could not be a line officer position. If she did not find a position in that timeframe, then one would be found for her. According to the Memo, Ms. Esperance would only be considered for non-line officer positions, i.e., a non-leadership role and clear decrease in her job duties.

43. The Memo stated that the reassignment was a "change of leadership" only and was not based on conduct or performance. Further, Mr. Van Every and Mr. Krueger announced to employees (via a face-to-face meeting) and to the FLT (via a phone call in the afternoon) on or about October 26, 2018, that Ms. Esperance was not removed for performance or conduct.

44. Before issuing the Memo, Mr. Van Every never said or gave Ms. Esperance anything in writing indicating that she needed to improve her performance.

45. From about October 29, 2018 to about February 15, 2019, Ms. Esperance had assumed the title of Special Assistant.

46. On or about October 30, 2018, Mr. Van Every made a threatening statement to Ms. Esperance at a scheduled meeting between them. At this meeting, Mr. Van Every reviewed Ms. Esperance's tasks in the role of Special Assistant to the Forest Supervisor. When Ms. Esperance

informed Mr. Van Every that she was fearful of what he was doing and had already done, he informed Ms. Esperance not to make this worse than it already is. Ms. Esperance understood this to be an intimidating threat that Mr. Van Every would make things worse for Ms. Esperance if she complained about his actions towards her.

47. On or about November 3, 2018, Ms. Esperance learned that Mr. Van Every had released private information regarding her that should be covered by the Privacy Act. Mr. Van Every made a statement in the Rapid City Journal regarding Ms. Esperance being removed as the Mystic District Ranger. By making a statement in a newspaper about Ms. Esperance's removal from her position, Mr. Van Every humiliated Ms. Esperance.

48. Upon information and belief, it is uncommon for Agency managers to provide such statements to the press.

49. Through the reassignment Memo, Mr. Van Every significantly decreased Ms. Esperance's authority and job duties that she previously held in her position as District Ranger.

50. Some of the ways in which Ms. Esperance's job authority and duties were decreased include:

a. Ms. Esperance was no longer a Line Officer. Line Officers have authority to make decisions within the Agency including, per the Forest Service Manual ("FSM") 1200 Organization, authorization to sign timber contracts, grazing permits, and special use permits on behalf of the Agency. Under her prior role, Ms. Esperance had this authority, but was subsequently limited to merely providing support or advice under her new title.

b. Ms. Esperance was no longer an Advanced Agency Administrator ("AADM"). AADM's are allowed to sign as such on fire burn plans and to go on assignments to assist with forest fires outside Ms. Esperance's district. Having this capability allowed Ms. Esperance to

receive a higher compensation, with some assignments exceeding $5,000.  Ms. Esperance was subsequently deprived of these opportunities and monetary gains as a result of her demotion.

      c.      Ms. Esperance no longer served as a supervisor or mentor for other employees, nor did she have the obligation to rate other employees' performance as she did under her prior title.

      d.      Ms. Esperance, under her demoted role, was solely limited to one focused program area, whereas previously she was responsible for leading and making decisions for diverse resource programs in nine different resource program areas.

      e.      Ms. Esperance, as District Ranger, executed all resource management and general administration activities, but later, as Special Assistant, only provided support in a focused area to resource management and general administration activities.

      f.      Ms. Esperance was barred from returning to the Mystic, South Dakota campus offices without first obtaining Mr. Van Every's permission.

51.      As a result of Ms. Esperance's loss of authority and title, Ms. Esperance's reputation within the Agency and the local community was tarnished.  The constructive demotion has hindered Ms. Esperance's ability to advance within USDA in the future.

52.      Ms. Esperance's reassignment was highly unanticipated and unwarranted given her long history of success and achievements within the Agency, and more specifically, in her role as District Ranger.

53.      Upon information and belief, Forest Supervisor Van Every was given a rating of "Outstanding" for the same period during which Ms. Esperance's performance allegedly warranted reassignment; however, the Forest Supervisor's rating is based on how the District Rangers under him, including Ms. Esperance, performed.  Ms. Esperance's district was also the busiest of the four districts for which the Forest Supervisor was responsible.

54. Ms. Esperance was further embarrassed and humiliated following receipt of the Memo as she was involuntarily and unreasonably escorted out of the facility in front of her former subordinates after being given a mere twenty minutes to clean out her office. Moreover, Mr. Van Every placed Ms. Esperance on administrative leave for the remainder of the day and the next full workday.

55. Upon information and belief, several other female employees under the supervision of Mr. Ferebee were also unreasonably reassigned or otherwise left their positions as a result of disparate treatment, including Melanie Fullman, Misty Hayes, Maribeth Gustafson, and Heather Trussell.

56. Ms. Esperance expressed her concerns about the use of unlawful reassignments to Mr. Van Every and Mr. Krueger at the November 2017 FLT meeting. Ms. Anderson and Mr. Kozel expressed similar concerns.

57. Upon information and belief, several men on the FLT who worked under Mr. Van Every were not reassigned, including Mr. Kozel; Mr. Gosse; Mr. Jackson; Mr. Adam; Mr. Butler; and Mr. Pechota.

58. On or about December 4, 2018, in a meeting between Ms. Esperance, Mr. Van Every, and Mr. Krueger regarding whether Ms. Esperance had identified any positions she was interested in following the Memo, Ms. Esperance stated words to the effect of, "No, this is an utterly discriminatory act and demonstrates an atmosphere of retaliation. What has happened in this Region is wrong."

59. Upon information and belief, in or about December 2018, three Human Resource/Employee Relations ("HR/ER") personnel (two in acting roles and one in a permanent role) working for the Denver office repeatedly questioned the appropriateness, legality, and lack of documentation used to support Ms. Esperance's reassignment. Mr. Van Every failed to deliver

any documentation until on or about December 10, 2018, in which he provided content for a letter, explicitly stating, "attached is my first draft of rationale for reassignment."

60. Upon information and belief, Julie Nelson, Acting SERS, sent an email to Mr. Van Every on or about December 4, 2018, informing him that Ms. Esperance's case does not meet the criteria for directed reassignment.

61. On January 31, 2019, the male managers permanently reassigned Ms. Esperance to a virtual position outside the Black Hills National Forest, where she had served as Mystic District Ranger.

62. On or about February 15, 2019, the male management unreasonably denied Ms. Esperance a "going away" party and a parting gift, which are standard for other departing employees.

63. Since about February 18, 2019, Ms. Esperance has served under the title of Regional Planner.

64. In or about April or May of 2019, Ms. Esperance's prior position of Mystic District Ranger was filled by a male employee, Jim Gubbels.

65. Upon information and belief, Ms. Nelson sent an email to Shannon Swaziek, ASC Branch Chief, on or about March 10, 2020, with the subject line of "Concerns about EEO case FS-2019-00100, Ruth Esperance." Within, Ms. Nelson stated, ". . . I believe we have opened the door for a convincing pretext argument with our inability to confidently state the reasons for the actions taken prior to them being taken" and "There is no doubt we don't look good and that Esperance was not treated well or in a manner consistent with other employees in similar situations."

## CAUSES OF ACTION

### COUNT I

### DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII (DISPARATE TREATMENT)

66. Ms. Esperance repeats and realleges the allegations contained in the preceding paragraphs as though the same were set forth in full herein.

67. Ms. Esperance was, at all times relevant herein, an employee of Defendant USDA within the meaning of Title VII (42 U.S.C. § 2000e *et seq.*).

68. At all times relevant herein, Defendant USDA was Ms. Esperance's employer within the meaning of Title VII (42 U.S.C. § 2000e *et seq.*).

69. Title VII of the Civil Rights Act prohibits employment practices that discriminate against Ms. Esperance on the basis of her sex.  Ms. Esperance has been the victim of unlawful discriminatory conduct in the workplace.

70. Ms. Esperance is a member of a protected class.

71. Ms. Esperance was qualified in her position as District Ranger at the USDA.

72. Ms. Esperance was unlawfully and intentionally subjected to disparate treatment and was subjected to adverse employment actions as a result of her sex.  Defendant USDA's agents and employees took materially adverse actions against Ms. Esperance, including, but not limited to, subjecting her to a discriminatory reassignment.

73. Male employees similarly situated to Ms. Esperance were treated more favorably and not subjected to these actions.

74. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Ms. Esperance's right to be free from discrimination based on sex.

75. As a direct, legal, and proximate result of the discrimination, Ms. Esperance has sustained, and will continue to sustain, economic and emotional injuries, and damage to her reputation and career, resulting in damages in an amount to be proven at trial.

## COUNT II

### DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII (HOSTILE WORK ENVIRONMENT)

76. Ms. Esperance repeats and realleges the allegations contained in the preceding paragraphs as though the same were set forth in full herein.

77. Ms. Esperance was subjected to a hostile working environment by Defendant's agents and employees, including Mr. Van Every and Mr. Ferebee, because of her sex (female). The discriminatory conduct included denying opportunities to Ms. Esperance that were made available to similarly-situated male employees, rejecting Ms. Esperance's ideas and concerns as they related to her position, making threatening statements to Ms. Esperance that made her fearful of taking action or making further reports, announcing Ms. Esperance's removal as District Ranger to the local press, preventing Ms. Esperance from seeking a subsequent line officer position through her directed reassignment, and disparaging Ms. Esperance's reputation within the Agency to ensure her inability to advance within the Agency.

78. Through the aforementioned acts, Defendant USDA subjected Ms. Esperance to a severe or pervasive hostile working environment, discriminated against Ms. Esperance, and denied her equal terms and conditions of employment.

79. The conduct was so severe or pervasive that a reasonable person in Ms. Esperance's position would find her work environment to be hostile or abusive.

80. Ms. Esperance believed the work environment to be hostile or abusive as a result of Defendant's agents' and employees' conduct.

81. Management-level employees knew, or should have known, of the hostile or abusive conduct because such employees were the ones who engaged in the unlawful conduct. Moreover, Ms. Esperance had made complaints to such employees regarding the hostile or abusive conduct.

82. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Ms. Esperance's right to be free from discrimination based on sex.

83. As a result of the aforementioned acts, Defendant violated the Ms. Esperance's right to be free from a hostile work environment, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*.

84. As a direct, legal and proximate result of the discrimination, Ms. Esperance has sustained, and will continue to sustain, economic and emotional injuries, and damage to her reputation and career resulting in damages in an amount to be proven at trial.

## **RELIEF REQUESTED**

85. Ms. Esperance requests the following relief:

    a. Injunctive relief, including reinstatement to the District Ranger position that Ms. Esperance held before October 26, 2018 and appropriate record correction regarding the reinstatement and negative statements made about Ms. Esperance concerning her reassignment;

    b. Compensatory damages to the maximum allowed by law;

    c. Damages for loss of pay;

    d. Attorney fees, costs, and expenses; and

    e. Such other relief as the Court deems just and appropriate.

Dated this 2nd day of September, 2020.

GOODSELL & OVIATT LAW FIRM

_____
G. Verne Goodsell
David S. Barari
246 Founders Park Drive, Suite 201
Rapid City, SD 57701
Telephone: (605) 343-3000
Facsimile: (605) 343-3251

And

SOLOMON LAW FIRM, PLLC
Daniel K. Gebhardt
(pending *pro hac vice*)
1025 Connecticut Avenue, N.W., Suite 1000
Washington, DC 20036
Telephone: (866) 833-3529
Facsimile: (202) 688-1896
dgebhardt@fedemploylaw.com

*ATTORNEYS FOR PLAINTIFFS*

TRIAL BY JURY IS HEREBY DEMANDED

_____
David S. Barari

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
RUTH ESPERANCE

**DEFENDANTS**
SONNY PERDUE
(Secretary of Agriculture, U.S. Department of Agriculture)

**(b)** County of Residence of First Listed Plaintiff: Pennington
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Washington, D.C.
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Daniel K. Gebhardt, Solomon Law Firm, PLLC,
1025 Connecticut Ave., N.W., Ste. 1000
Washington, DC 20036 -- (866) 833-3529

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e et seq. (specifically Title VII of the Civil Rights Act of 1964)

Brief description of cause:
Sex discrimination under Title VII of the Civil Rights Act of 1964

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
**DEMAND $** 500,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: 09/02/2020
SIGNATURE OF ATTORNEY OF RECORD: *Daniel K. Gebhardt*

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE