UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RUTH ESPERANCE,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS J. VILSACK, Secretary of Agriculture, U.S. Department of Agriculture,<br><br>Defendant. | 5:20-CV-05055-LLP<br><br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, Ruth Esperance ("Plaintiff" or "Esperance"), sued her employer, Sonny Perdue, the Secretary of Agriculture for the U.S. Department of Agriculture (USDA),[1] alleging claims of sex discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. Esperance claims that she was wrongfully removed from her supervisory position on account of her gender, and that she was subject to a hostile work environment. She asks for reinstatement to her former position, compensatory damages, damages for loss of pay, and other relief allowed under Title VII. Defendant has moved for summary judgment on both of Plaintiff's Title VII claims, and Defendant seeks dismissal of all allegations against Brian Ferebee. (Doc. 38.) For the reasons stated in this memorandum opinion, the motion for summary judgment is granted in part and denied in part, and the motion to dismiss is denied.

**FACTUAL BACKGROUND**

For the purpose of the motion for summary judgment, the record establishes the following:

From September of 2012 to October of 2018, Ms. Esperance was the Mystic District Ranger for the Black Hills National Forest. Doc. 56-2, Plaintiff Response to Defendant's SOF, ¶6. Mark Van Every was Forest Supervisor for the Black Hills National Forest and was Ms.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party. Thomas J. Vilsack became the Acting Secretary of Agriculture on February 21, 2021.

Esperance's first level supervisor. *Id.* at ¶2. On October 26, 2018, Ms. Esperance received a letter of reassignment notifying her that she had been relieved of her position as Mystic District Ranger and temporarily reassigned to the position of Special Assistant to the Forest Supervisor. Doc. 56-3, Esperance Affidavit, Ex. 2, p. 1. Mr. Van Every, in concurrence with Regional Forester, Brian Ferebee, authorized the removal and reassignment decision. Doc. 56-4, Gebhardt Affidavit, Ex. 2, Van Every Dep. at 16-17; Ex. 3, Krueger Dep., at 19, 27; Esperance Aff., ¶ 7. Plaintiff was told the reassignment had nothing to do with performance issues or misconduct but was a change in leadership. Doc. 56-3, ¶¶ 7, 18; Doc. 56-4, Ex. 1, p. 2 (PageID #562). The reassignment was at the same grade and step under the General Schedule classification and pay system for Federal employees, but Plaintiff was stripped of all supervisory duties and had decreased authority. Doc. 56-3, Esperance Aff., ¶ 4.

On January 31, 2019, Plaintiff received a letter permanently reassigning her to the position of Natural Resource Specialist. Doc. 56-3, Esperance Aff., Ex. 3, p. 24-26. Again, this assignment was at the same grade and step under the General Schedule classification and pay system for Federal employees but came with no supervisory duties. The January 31 reassignment letter included a list of performance and misconduct related issues as the reasons for the reassignment.[2] *Id.* The January 31 reassignment letter also states that USDA management discussed these concerns with Plaintiff during her year-end performance review on October 27, 2017, and at times in 2018. *Id.* Plaintiff disputes the allegations of misconduct and denies that USDA management counseled her about performance or misconduct issues. Esperance Aff., p. 7, ¶¶ 25-27.

Prior to Plaintiff's reassignment, she claims management engaged in a pattern of gender-based discrimination in the workplace. *See id.* at p. 4-5, ¶¶ 13-15. For example, Plaintiff claims that Mr. Van Every frequently denied Plaintiff and other women on the FLT opportunities for special assignments (which were offered to male FLT members), and routinely dismissed input from female FLT members. *Id.* at p. 4, ¶ 13-14. Plaintiff also alleges that on October 30, 2018, in a meeting after her first reassignment, Mr. Van Every told her to "not to make this worse than it already is," which she took as a threat to prevent her from taking legal action. Doc. 56-3,

---

[2] The letter states that the reassignment is because of "a number of concerns related to your leadership abilities, including your resistance or unwillingness to implement leadership decisions and direction, conflicts with Forest Leadership Team (FLT) members and other staff, and lack of sharing and coordination of zone employees with the other District Ranger in your zone." Doc. 56-3, Esperance Aff. Ex. 3, p. 24-26.

Esperance Aff., Ex. 9, pp. 71, 74. Finally, Plaintiff alleges that Mr. Van Every provided a statement to the local newspaper confirming her removal from the Mystic District Ranger position that was meant to "humiliate and disparage" her. *Id.* at p. 73.

## PROCEDURAL BACKGROUND

On December 22, 2018, Ms. Esperance filed a formal Equal Employment Opportunity (EEO) complaint against USDA, alleging harassment (hostile work environment) and disparate treatment claims. Doc. 56-3, Esperance Aff., ¶ 4, Ex. 1. After her permanent reassignment, Plaintiff filed an amendment to her discrimination complaint. *Id.* at ¶ 5, Ex. 3. The Report of Investigation indicates that Plaintiff alleged "the management officials who subjected her to harassment are Mark Van Every, Brian Ferebee, and Jerry Krueger." Doc. 56-3, Esperance Aff., ¶ 5, Ex. 4, p. 29.

After requesting a hearing with the Equal Employment Opportunity Commission, Plaintiff received the USDA's final decision which triggered her right to file a complaint in federal court, Plaintiff filed the Complaint in this Court on September 2, 2020. (Doc. 1.)

## PRINCIPLES OF SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273–74 (8th Cir. 1988). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (internal quotation marks omitted).

## I. Count I: Title VII Sex Discrimination (Disparate Treatment)

### A. The Law

Plaintiff alleges that Defendant discriminated against her based on her gender in violation of Title VII. Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for certain employers "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

The Eighth Circuit has described what courts are to consider when ruling on a motion for summary judgment in an employment discrimination lawsuit:

> At the summary judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action. If so, the presence of additional legitimate motives will not entitle the defendant to summary judgment. Therefore, evidence of additional motives, and the question whether the presence of mixed motives defeats all or some part of plaintiff's claim, are trial issues, not summary judgment issues.

*Griffith v. City of Des Moines*, 387 F.3d 733, 735 (8th Cir. 2004) (emphasis in original).

To defeat summary judgment on her discrimination claim, Plaintiff must either show direct evidence of discriminatory motive or intent, or rely on the burden-shifting method in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to create an inference of discrimination. *Blake v. MJ Optical. Inc.*, 870 F.3d 820, 825–26 (8th Cir. 2017).

Plaintiff frames her argument in terms of the *McDonnell Douglas* paradigm. Under *McDonnell Douglas,* Plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802. A prima facie case of discrimination requires that Plaintiff show she: "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4)

4

suffered under circumstances permitting an inference of discrimination." *Davis v. Jefferson Hosp. Ass'n,* 685 F.3d 675, 681 (8th Cir. 2012). The Eighth Circuit has "recognize[d] that the threshold of proof necessary to make a prima facie case is minimal." *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109–10 (8th Cir. 1998).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its adverse employment action. *See Davis,* 685 F.3d at 681.

If Defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back to Plaintiff to show that the "proffered justification is merely a pretext for discrimination." *Id.*

Although intermediate burdens shift back and forth under the *McDonnell Douglas* framework, the ultimate burden of demonstrating that the defendant intentionally discriminated always remains with the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993) (admonishing that at all times the Title VII plaintiff holds "the ultimate burden of persuasion").

### B. ANALYSIS

#### 1. Plaintiff's Prima Facie Case

Defendant does not dispute that Plaintiff is a member of a protected group, that she met the legitimate expectations of Defendant, or that she suffered an adverse employment action. Thus, if Plaintiff has shown circumstances permitting an inference of discrimination, then she has established a prima facie case of discrimination. Recognizing that the threshold of proof is minimal, the Court will assume without deciding that Plaintiff established a prima facie case of sex discrimination. *See, e.g., Fiero v. CSG Sys. Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (assuming without deciding that the plaintiff met prima facie case).

#### 2. Legitimate, Nondiscriminatory Reasons for Removing Plaintiff as Ranger

The Court next considers Defendant's offered explanations for removing Plaintiff from the Ranger position. Defendant contends that there were numerous, legitimate concerns with Plaintiff's conduct in the workplace, and that Plaintiff was given several opportunities to improve. The record is replete with affidavits from USDA employees supporting the decision to remove Plaintiff from the Ranger leadership position. These are examples taken from declarations of those employees as set forth in Defendant's Statement of Undisputed Material Facts:

> 22. Ms. Esperance was disruptive and disrespectful during Forest Leadership Team (FLT) meetings. Anderson Decl., at ¶9; Apodaca Decl., at ¶15; Jackson Decl., at ¶8; Jacobson Decl., at ¶8; Krueger Decl., at ¶12; Van Every Decl., at ¶43.

> 23. The FLT oversees the overall management of the Black Hills National Forest, including developing and implementing land management strategies, establishing budget priorities and allocations, developing forest priorities and District program of work, and discussing staffing/organizational decisions. Anderson Decl., at ¶4; Jackson Decl., at ¶4; Jacobson Decl., at ¶4; Kozel Decl., at ¶5; Krueger Decl., at ¶4; Morris Decl., at ¶4; Van Every Decl., at ¶ 4.
>
> 24. The FLT is composed of the Forest Supervisor, Deputy Forest Supervisor, District Rangers, Staff Officers, Public Affairs Officer, Executive Assistant, and an Ad-Hoc employee member, and typically meets once a month, or on an as needed basis. *Id.*
>
> 25. As a District Ranger, Ms. Esperance was a member of the FLT and attended FLT meetings. Anderson Decl., at ¶5; Jackson Decl., at ¶5; Jacobson Decl., at ¶5; Kozel Decl., at ¶6; Krueger Decl., at ¶5; Morris Decl., at ¶5; Van Every Decl., at ¶5.
>
> 26. Ms. Esperance would openly challenge Mr. Van Every during FLT meetings, including rolling her eyes, making faces, and sighing heavily. Anderson Decl., at ¶9; Apodaca Decl., at ¶15; Jackson Decl., at ¶8.
>
> 27. Hell Canyon District Ranger Tracy Anderson cautioned Ms. Esperance numerous times that she needed to "tone things down" and that her demeanor, tone, and body language were unprofessional. Anderson Decl., at ¶9. Ms. Anderson further advised Ms. Esperance that she needed to figure out a better way to communicate with Mr. Van Every. *Id.*
>
> 28. During a FLT meeting in November or December of 2017, Ms. Esperance challenged Mr. Van Every and was disruptive. Jacobson Decl., at ¶8. Following the meeting, Public Affairs Officer Scott Jacobsen encouraged Ms. Esperance to speak privately with Mr. Van Every about her concerns rather than openly challenging him in FLT meetings. *Id.*
>
> 31. Executive Assistant Twila Morris states Ms. Esperance over time began challenging everything Mr. Van Every said and did. Morris Decl., at ¶9.
>
> 32. Ms. Morris frequently cautioned Ms. Esperance to pick her battles. *Id.*
>
> 33. Ms. Morris states Ms. Esperance made FLT meetings "cringeworthy." *Id.*

(Doc. 40, pp. 4-6.)

Though Plaintiff denies these assertions, she does not cite to the record or set forth any specific evidence to dispute them. "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Found. v. Gaines*, 536 F.3d 813, 818 (8th Cir. 2008). A genuine issue of material fact requires

"sufficient evidence supporting the claimed factual dispute" that it requires "a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby,* 477 U.S. at 249 (citation and internal quotation marks omitted). When asserting that a fact is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); *see Celotex*, 477 U.S. at 322. Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Here, Plaintiff has failed to sufficiently counter Defendant's evidence of a nondiscriminatory reason for its adverse employment action.

The Court determines that Defendant has set forth a legitimate, nondiscriminatory justification for reassigning Plaintiff. Therefore, the burden shifts back to Plaintiff to show that Defendant's explanation is pretext for gender discrimination.

**3. Pretext**

In order to avoid summary judgment in favor of Defendant at this stage, Plaintiff must present sufficient evidence to create a genuine issue of fact that Defendant's reason for reassigning her is pretextual and that the real reason Plaintiff was reassigned was her gender.

Pretext can be shown in many ways, including "showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.,* 596 F.3d 871, 874 (8th Cir. 2010). Comparator evidence, evidence that similarly situated employees outside the protected class were treated differently, is a common way of showing pretext. *See Lewis v. Heartland Inns of Am., L.L.C.,* 591 F.3d 1033, 1040–41 (8th Cir. 2010). "The touchstone inquiry remains whether circumstances permit a reasonable inference of discrimination." *Id.* at 1040.

In opposing Defendant's motion for summary judgment, Plaintiff relies, in part, on the different explanations given for removing her from the Ranger position. Specifically, in October of 2018, Mr. Van Every informed Plaintiff and the FLT Team that Plaintiff's removal was not based on conduct or performance. In January of 2019, Mr. Van Every wrote a letter that listed numerous conduct or performance issues that led to Plaintiff's reassignment. The letter states Plaintiff's reassignment was because of "a number of concerns related to your leadership abilities,

including your resistance or unwillingness to implement leadership decisions and direction, conflicts with Forest Leadership Team (FLT) members and other staff, and lack of sharing and coordination of zone employees with the other District Ranger in your zone." Doc. 56-3, Esperance Aff. Ex. 3, p. 24-26. Defendant argues that it did not shift its explanation of the reassignment because Plaintiff's reassignment was not based on an inability to perform her duties as a district ranger, "but rather because of her failure to follow supervisory directive and effectively collaborate with forest leadership, fellow employees, and community stakeholders." (Doc. 57, p. 14.) However, if these alleged problems were present in October of 2018 when Plaintiff was removed from the Ranger position, then it is curious why management did not mention them as the reason for the reassignment until three months later in the January 31, 2019 letter, after Plaintiff filed an EEO complaint. Furthermore, Plaintiff denies she was counseled about the performance issues listed in the January 31 letter, and she has submitted copies of positive performance evaluations.[3]

In support of its conduct-related reasons for Plaintiff's reassignment, and to contradict Plaintiff's assertion that she was not counseled about the alleged problems listed in the January 31 letter, Defendant relies in part on notes kept by Mr. Van Every about what he asserts were on-going discussions he had with Plaintiff. Mr. Van Every also kept notes in regard to Plaintiff's coworkers, but he destroyed or discarded all of those notes when he retired. Mr. Van Every testified that he did not destroy his notes related to Plaintiff because she had filed an EEO complaint.

As explained above, comparator evidence and instances of disparate treatment can support a claim of pretext. *See Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994). Plaintiff has the burden of proving that she and disparately treated males were "similarly situated in all relevant respects." *Id*. The Eighth Circuit has held that "[e]mployees are similarly situated when they 'are involved in or accused of the same offense and are disciplined in different ways.' " *Id.* (quoting *Boner v. Board of Comm'rs*, 674 F.2d 693, 697 (8th Cir. 1982)). Defendant argues that

---

[3] Plaintiff also points out the disagreement among managers as to who was responsible for her reassignment. According to Plaintiff, Mr. Van Every told her that Brian Ferebee approved of the reassignment. Brian Ferebee, the second-level supervisor, testified that Mr. Van Every made the reassignment. Mr. Krueger testified that the reassignment decision must be authorized by Mr. Ferebee as the Regional Forester.

8

Plaintiff has not established that the destroyed notes are truly comparative. But the problem is that Plaintiff does not have access to the information needed to determine whether the destroyed notes reflected that she was treated differently than similarly situated male employees. Comparator evidence is one way of showing pretext, and Plaintiff does not have access to that evidence.

Under the spoliation doctrine, a jury may draw an adverse inference that the contents of evidence that was destroyed were unfavorable to that party. "In order for an adverse inference instruction for spoliation to be warranted, a district court is required to make two findings: (1) there must be a finding of intentional destruction indicating a desire to suppress the truth, and (2) there must be a finding of prejudice to the opposing party." *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 879 (8th Cir. 2015). Plaintiff has asked the Court to give an adverse inference instruction at trial due to Mr. Van Every's destruction of evidence. (Doc. 73.) The Court will decide at the conclusion of trial evidence whether Plaintiff is entitled to an adverse inference instruction at trial.

However, an adverse inference of spoliation can be relevant on summary judgment. *See Byrnie v. Cromwell, Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) ("In borderline cases, an inference of spoliation, in combination with some (not insubstantial) evidence for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment." (internal quotation marks omitted)). In a case involving a bench trial and not a motion for summary judgment, the Eighth Circuit held that the destruction of evidence entitled the plaintiff to a presumption of pretext in her race discrimination case. *See Favors v. Fisher*, 13 F.3d 1235, 1239 (8th Cir. 1994). The presumption of pretext imposed on the defendant employer "the burden of showing that the documents were destroyed in good faith." *Id.* The trial court credited the defendant's explanation for the destruction and, therefore, concluded the defendant had rebutted the presumption of pretext. *Id.* The Eighth Circuit upheld that decision. *Id.* at 1239-40.

The Court concludes on the record at this point that the documents were destroyed in good faith. Trial evidence might show otherwise. However, the Court also concludes that the inconsistent reasons given for removing Plaintiff from the Ranger position, the differing testimony about whether Mr. Ferebee had input into the reassignment, Plaintiff's assertion that she was not counseled about the performance issues listed in the January 31 letter, and Plaintiff's positive performance evaluations, are sufficient to create a genuine issue of fact whether Defendant's reasons for reassigning Plaintiff are pretextual. *See Griffith*, 387 F.3d at 735 ("At the summary

judgment stage, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was *a* motivating factor in the defendant's adverse employment action.") (emphasis in original). Accordingly, Defendant's motion for summary judgment is denied as to the gender discrimination claim in Count I of the Complaint.

## II. Count II:  Title VII Hostile Work Environment

### A. The Law

Plaintiff claims that she was subjected to a hostile work environment based on her gender. Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted). To establish a prima facie case, a plaintiff must show: "(1) that they belong to a protected group; (2) that they were subject to unwelcome harassment; (3) a causal nexus between the harassment and their membership in the protected group; [and] (4) that the harassment affected a term, condition, or privilege of employment." *Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1101 (8th Cir. 2001) (citation omitted).

In order to establish the fourth element, Plaintiff must show that the harassment was "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Clay v. Credit Bureau Enterprises, Inc.*, 754 F.3d 535, 540 (8th Cir. 2014) (quoting *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011)). The Eighth Circuit has explained that this element requires "a twofold inquiry." *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1047 (8th Cir. 2005). "First, the harassment must be sufficiently severe or pervasive to create an 'objectively hostile' work environment . . . . Second, if the victim does not subjectively perceive the environment as abusive, then the conduct has not altered the conditions of employment." *Id.* (internal citations omitted). In other words, the conduct must be severe as viewed objectively by a reasonable person and subjectively by the alleged victim. *Singletary v. Missouri Dep't of Corrs.*, 423 F.3d 886, 892 (8th Cir. 2005) (citation omitted).

The Eighth Circuit has elaborated on the inquiry into whether or not the environment was "objectively hostile":

> [The environment] must be more than merely offensive, immature or unprofessional; it must be extreme. Conduct that does not exceed the threshold of severity is insufficient to create a prima facie case of sexual harassment. Title VII

10

was not designed to create a federal remedy for all offensive language and conduct in the workplace.

*Kratzer*, 398 F.3d at 1047 (internal citations and quotations omitted). In other words,

> [H]arassment standards are demanding — to be actionable, conduct must be extreme and not merely rude or unpleasant. More than a few isolated incidents are required, and the alleged harassment must be so intimidating, offensive, or hostile that it poisoned the work environment. [The plaintiff] must prove his workplace was permeated with discriminatory intimidation, ridicule, and insult.

*LeGrand v. Area Res. for Cmty. and Human Servs.*, 394 F.3d 1098, 1101–02 (8th Cir. 2005) (internal citations and quotations omitted). The determination of whether or not an environment was "objectively hostile" is "a fact-intensive inquiry." *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 456 (8th Cir. 2001) (citing *Bales v. Wal–Mart Stores, Inc.*, 143 F.3d 1103, 1109 (8th Cir. 1998)). To determine whether a work environment would be objectively offensive to a reasonable person, courts "examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Singletary*, 423 F.3d at 892. "A single offensive utterance or exposure to distasteful conduct ordinarily does not rise to the level of a Title VII violation." *See Hathaway v. Runyon*, 132 F.3d 1214, 1221 (8th Cir. 1997).

**B. Analysis**

In support of her hostile work environment claim, Plaintiff cites to the same instances of disparate treatment of males and females that she asserted in support of her disparate treatment claim, i.e., male management giving special assignments to men over women, routinely dismissing Plaintiff's ideas, and communicating more with male colleagues. Plaintiff also refers to the comment Mr. Van Every allegedly made to her that she should not "make this worse than it already is," and the fact that Mr. Van Every gave a statement to the local newspaper about her removal from the Ranger position.

Defendant does not dispute that Plaintiff, a female, is a member of a protected class. Defendant disputes the second, third and fourth prongs, arguing Plaintiff cannot establish she was subject to unwelcome harassment, that the alleged harassment was based on her gender, or that the harassment affected a term, condition, or privilege of her employment.

It is only necessary to examine the fourth prong because it is clear any harassment which may have occurred was not severe or pervasive enough to deem Plaintiff's work environment hostile. The Eighth Circuit's decision in *Bradley v. Widnall*, 232 F.3d 626 (8th Cir. 2000), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011), is illustrative of why Plaintiff's hostile work environment claim does not survive summary judgment.

In *Bradley*, the plaintiff alleged she had been subjected to a hostile work environment when her supervisor "made various negative comments in her regard, removed much of her decision-making authority, encouraged her employees to bypass the chain of command, gave white employees preferential treatment, instructed employees to spy on her activities, had disparaging memos placed in her file, attempted to 'set her up' to fail a hospital inspection, and generally treated her in a disrespectful and discriminatory manner." *Id.* at 630. The Eighth Circuit affirmed the district court's grant of summary judgment, holding that while the "conduct cited by [plaintiff] may have resulted in a frustrating work situation," it was not "so severe or pervasive as to have affected a term, condition, or privilege of employment." *Id.* at 631–32.

Similarly, in *Breeding v. Arthur J. Gallagher & Co.*, the Eighth Circuit stated "[Plaintiff] felt she was unfairly criticized and often yelled at, but these conditions, while not desirable, do not amount to actionable harassment on the basis of age." 164 F.3d 1151, 1159 (8th Cir. 1999).

As in *Bradley* and *Breeding*, Plaintiff in the present case has not presented sufficient evidence to meet the severe and pervasive level. Plaintiff's allegations may illustrate a frustrating work situation, but not harassment that affected a term or condition of her employment.

The Court concludes a reasonable juror could not find that the frequency or severity of management's conduct created a hostile work environment, and Defendant's motion for summary judgment is granted as to that claim in Count II of the Complaint.

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendant argues that Plaintiff's references to discrimination by Mr. Ferebee should be stricken from her judicial Complaint because she failed to exhaust her administrative remedies with regard to those allegations.[4] These allegations include that Mr. Ferebee "engaged in acts of

---

[4] Defendant argues that the Court does not have subject matter jurisdiction over unexhausted claims. However, the Supreme Court has ruled that Title VII's administrative exhaustion requirement is not a jurisdictional prerequisite, but rather a statutory procedural obligation of litigants. *See Fort Bend Cnty. v. Davis*, --- U.S. ---, 139 S. Ct. 1843, 1846 (2019). The Supreme Court stated that "[p]assing references to Title VI's charge-filing requirement as 'jurisdictional'

gender discrimination against female employees at USDA" and that Plaintiff "was subjected to a hostile working environment by Defendant's agents and employees, including Mr. Van Every and Mr. Ferebee, because of her sex (female)." Doc. 1, ¶¶ 17, 77.

"Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir. 1994). "A plaintiff will be deemed to have exhausted administrative remedies as to allegations contained in a judicial complaint that are like or reasonably related to the substance of charges timely brought before the EEOC." *Id.* Therefore, the scope of an ensuing Title VII action is not necessarily limited to the specific allegations made in the EEOC charge. *Nichols v. Am. Nat'l Ins. Co.,* 154 F.3d 875, 886–87 (8th Cir. 1998).

The Eighth Circuit has stated:

> To determine whether an allegedly discriminatory action falls within the scope of a claim, "the administrative complaint must be construed liberally" in order to further the remedial purposes of applicable legislation, *i.e.,* to prohibit unlawful employment practices, and a plaintiff "may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge."

*Stuart v. General Motors Corp.,* 217 F.3d 621, 631 (8th Cir. 2000) (quoting *Nichols v. American Nat'l Ins. Co.,* 154 F.3d 875, 886-87 (8th Cir. 1998)). "The breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Id.* "While a charge of discrimination 'need not specifically articulate the precise claim, it must nevertheless be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim.' " *Malone v. Ameren UE,* 646 F.3d 512, 516 (8th Cir. 2011) (quoting *Humphries v. Pulaski Cnty. Special Sch. Dist.,* 580 F.3d 688, 697 (8th Cir. 2009)). *See also E.E.O.C. v. Delight Wholesale Co.,* 973 F.2d 664, 668 (8th Cir. 1992) ("The permissible scope of an EEOC lawsuit is not confined to the specific allegations in the charge; rather, it may extend to any discrimination like or related to the substance

---

in prior Court opinions ... display the terminology employed when the Court's use of 'jurisdictional' was 'less than meticulous.' " *Id.* at 1849 n.4. Accordingly, *Fort Bend* instructs that Title VII's statutory provisions containing the charge-filing requirement "[do] not speak to a court's authority or refer in any way to the jurisdiction of the courts." *Id.* at 1850–51.

of the allegations in the charge and which reasonably can be expected to grow out of the investigation triggered by the charge.").

The allegations against Mr. Ferebee are reasonably related to Plaintiff's underlying discrimination claims. The Report of Investigation for Plaintiff's EEO complaint specifically named Mr. Ferebee as a responsible management official, and the Report shows that Plaintiff alleged "the management officials who subjected her to harassment are Mark Van Every, Brian Ferebee, and Jerry Krueger." Doc. 56-3, Esperance Aff,, ¶ 5, Ex. 4, pp. 28-30. This put Defendant on notice that Plaintiff could include allegations of discrimination by Mr. Ferebee since those allegations grew out of the EEOC investigation or were otherwise related to it. Thus, Plaintiff exhausted her administrative remedies in relation to Mr. Ferebee, and the allegations against him will not be stricken from the Complaint. Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment is denied as to the sex discrimination claim in Count One (disparate treatment), and the motion for summary judgment is granted as to Count Two (hostile work environment). (Doc. 38.) The motion to dismiss allegations against Brian Ferebee is denied. (Doc. 38.)

Dated this 23rd day of August, 2023.

BY THE COURT:

*/s/ Lawrence L. Piersol*
Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN
*/s/ Matthew Thelen*