UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| RUTH ESPERANCE,<br><br>　　　Plaintiff,<br><br>v.<br><br>THOMAS J. VILSACK, Secretary of Agriculture, U.S. Department of Agriculture,<br><br>　　　Defendant. | 5:20-cv-05055-LLP<br><br><br>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL OR REMITTITUR** |

## I.    INTRODUCTION

Ruth Esperance sued the Secretary of Agriculture alleging gender discrimination under Title VII of the Civil Rights Act of 1964.  This matter was tried before a jury from September 18 to September 22, 2023.  The issue to be determined at trial was whether gender was a motivating factor in the reassignment of Ms. Esperance.  Because there was no direct evidence of discrimination, the case was considered under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  At the close of evidence and before the case was submitted to the jury, the Defendant made a Rule 50(a) Motion for Judgment as a Matter of Law because there was no evidence of discrimination and Plaintiff failed to present legally sufficient evidence of pretext.  At that time, the Court noted that "[w]ith the exception of the plaintiff's testimony itself, which is mainly work-related, there wasn't anybody that believed that there was any gender discrimination.  At the core of this, that's troubling."  Trial Transcript ("Tr.") 1261:13-17 (Doc. 115). The Court further noted that it was the advice given by the Human Resources staff that changed—not the reasons for the reassignment—and commented on the "inter-Nicaean war" between the Human Resources staff.  Tr. 1258:25-1259:6 (Doc. 115).  The

Court, however, took the Defendant's Rule 50(a) motion under advisement and allowed the issue to go to the jury.  Tr. 1261:18-21.  On September 23, 2023, the jury returned a verdict awarding the Plaintiff $400,000 in non-pecuniary damages (emotional pain and mental anguish).  Doc. 105.

For the reasons articulated herein, the Defendant renews his Motion for Judgment as a Matter of Law under Federal Rule of Civil Procedure 50(b) and requests that judgment be entered in his favor.  In the alternative, the Defendant moves for a New Trial or Remittitur under Federal Rule of Civil Procedure 59.  Additionally, the judgment must be amended to conform to the statutory cap of $300,000 for non-pecuniary compensatory damages pursuant to 42 U.S.C. § 1981a.

## II.    MOTION FOR JUDGMENT AS A MATTER OF LAW

Under Federal Rule of Civil Procedure 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).  "Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors."  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).  "Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."  *Id.* at 148-149.

In considering a motion for judgment as a matter of law, the court should review all the evidence in the record and draw all *reasonable* inferences in favor of the nonmoving party.  *Id.* at 150 (emphasis added); *see also Elam v. Regions Financial Corp.*, 601 F.3d 873, 877 (8th Cir. 2010) (internal quotations marks and citation omitted) (stating inferences must be "reasonable

inferences—those that can be drawn from the evidence without resort to speculation"); *O'Brien v. Dep't of Agriculture*, 532 F.3d 805, 811 n. 3 (8th Cir. 2008) (internal quotations marks and citation omitted) (stating "bare assertion and speculation as to [an employer's] motive does not create a genuine issue of material fact").[1]   The court may also consider evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that any evidence comes from disinterested witnesses.  *Reeves,* 530 U.S. at 151.

Additionally, even if the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, there will be instances where no rational factfinder could conclude that the action was discriminatory.  *Id.* at 148.

> For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, non-discriminatory reason for the employer's decision, *or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination has occurred.*

*Id.* (emphasis added).

### A.   Plaintiff Presented No Evidence of Discriminatory Intent.

Ms. Esperance failed to establish a prima facie case of gender discrimination.  To make a prima facia case of gender discrimination, plaintiff must show that "(1) she was a member of the protected group; (2) she was qualified to perform the job; (3) she suffered an adverse employment action; and (4) circumstances permit an inference of discrimination."  *Bearden v. Int'l Paper Co.*, 529 F.3d 828, 831 (8th Cir. 2008).  Plaintiff's own belief that she was treated differently due to her sex is insufficient.  She must substantiate her allegations with "'sufficient probative evidence that would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy.'"

---

[1] The standard for judgment as a matter of law under Rule 50 mirrors the standard for summary judgment under Rule 56.  *Reeves*, 530 U.S. at 150.

*Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)).

Ms. Esperance offered no evidence of discrimination.  In fact, not a single witness testified that they believed Ms. Esperance's reassignment was based on gender.

Ms. Esperance called six witnesses to testify on her behalf.  Bonnie Schramel and Jamie Barnes were Human Resource Specialists tasked with the processing of personnel documents.  Tr. 56:15-57:23, 89:25-90:6, 91:22-92:4,  (Doc. 111).  Ms. Schramel testified that it was unclear from the letter of temporary reassignment whether Ms. Esperance was being reassigned for performance reasons and that she brought the matter to the attention of her supervisor, Lead Human Resource Specialist Jamie Barnes.  Tr. 59:16-61:11 (Doc. 111).  Ms. Barnes testified that she received a telephone call from Ms. Schramel regarding a management reassignment involving Ms. Esperance and that she consulted with Employee Relations regarding the letter of temporary reassignment.  Tr. 92:5-93:17, 96:13-22 (Doc. 111). Both Ms. Schramel and Ms. Barnes questioned whether the letter of temporary reassignment followed the proper protocol for a management reassignment and stated that Mr. Van Every should have consulted with Employee Relations.  Tr. 60:15-61:8, 63:25-64:4, 71:3-72:12, 97:14-99:22, 129:6-130:1 (Doc. 111).  As discussed in greater detail below, however, Mr. Van Every did consult with Supervisory Employee Relations Specialist Jeanne Weihrauch regarding the reassignment process and content of the letter of temporary reassignment.  Tr. 555:17-24, 671:22-672:13, 673:19-678:22, 679:22-682:2 (Doc. 113);  730:24-731:25 (Doc. 114); Tr. 1118:23-1120:7 (Doc. 115); Doc. 107 at pp. 43-51 (Ex. 227, 228, and 230).  Additionally, Ms. Schramel worked remotely from her home and Ms. Barnes worked in the Regional Office in Denver, CO.  Tr. 57:1-11, 90:4-8 (Doc. 111).  They had no personal knowledge regarding events

on the Black Hills National Forest or the reason for Ms. Esperance's reassignment.  Tr. 87:22-88:8, 144:12-14 (Doc. 111).

Ms. Esperance also called Eric Scott, Adam Weaver, David Valenzuela, and Shirlene Haas to testify regarding her job performance as Mystic District Ranger.  However, Mr. Scott, Mr. Weaver, Mr. Valenzuela, and Ms. Haas *all* testified that they did not observe any incidents of discrimination by Mr. Van Every against Ms. Esperance specifically, or women generally.  Mr. Scott was a timber management assistant and forester on the Mystic District and Ms. Esperance was his first and second-level supervisor.  Tr. 431:15-432:3, 433:19-434:2 (Doc. 112).  He testified that he never had any reason to believe Mr. Van Every discriminated against women.  Tr. 443:16-20 (Doc. 112).  Mr. Weaver was a hydrologic technician for the Mystic and Hell Canyon districts and Ms. Esperance was his second-level supervisor.  Tr. 481:5-8, 483:3-7 (Doc. 113).  He testified that he never observed Mr. Van Every and Ms. Esperance interact and had no personal knowledge regarding their working relationship.  Tr. 494:13-18 (Doc. 113).  Mr. Valenzuela was a hydrology program coordinator for the Mystic and Hell Canyon districts and Ms. Esperance was his "primary" supervisor.  Tr. 495:22-496:6, 497:13-17 (Doc. 113).  He testified that he did not have an opportunity to observe the relationship between Mr. Van Every and Ms. Esperance.  Tr. 511:6-8 (Doc. 113).  Finally, Shirlene Haas was a recreation specialist on the Mystic District and Ms. Esperance was her second-level supervisor.  Tr. 513:11-17, 514:4-15 (Doc. 113).  Ms. Haas,  a woman, testified that she did not believe Ms. Esperance was mistreated "as a woman." Tr. 538:9-11 (Doc. 113).  Ms. Haas further testified that she did not believe Ms. Esperance's reassignment was based on gender and could not identify any specific instances of discrimination by Mr. Van Every against Ms. Esperance.  Tr. 545:9-546:14 (Doc. 113).

5

Furthermore, Ms. Esperance's own testimony fails to support her allegations of discrimination. Ms. Esperance never testified that *she* believes her reassignment was motivated by gender. She testified:

> Gebhardt:    Do you think the reassignment was done for legitimate reasons?
> Esperance:   No. Not at all. I mean the only reason—the only reason I can logically come up with, with all that we are trained in doing, is this is purely gender discrimination of all the things that have lead up to this point. *There is no other logical explanation in my mind.* We have all this training. There's no—there's no legitimate reason for that action to have occurred. None.

Tr. 328:25-329:8 (Doc. 112) (emphasis added). Ms. Esperance's allegations are based on nothing more than speculation and conjecture.

Moreover, *several* co-workers and members of the Forest Leadership Team ("FLT") testified that they believe Mr. Van Every treated men and women equally and do not believe Ms. Esperance's reassignment was motivated by gender. Deputy Forest Supervisor Jerome Krueger, Public Affairs Officer Scott Jacobson, Northern Hills District Ranger Steve Kozel, Hell Canyon District Ranger Tracy Anderson (a woman), Black Hills Resilient Landscape ("BHRL") Program Manager Anne Davy (a woman), Administrative Officer Todd Butler, Administrative Assistant Twila Morris (a woman), Recreation and Lands Program Manager Anne Apodaca (a woman), Natural Resources Staff Officer Brian Jackson, and Fire Staff Officer Todd Pechota, all disinterested witnesses, testified that they believe Mr. Van Every treated men and women equally and do not believe Ms. Esperance's reassignment was motivated by gender. Tr. 636:20-23 (Doc. 113); 838:4-12, 894:6-13, 895:9-23, 924:7-17, 941:22-942:3, 959:25-960:4, 992:17-24, 1013:1-8, (Doc. 114); Tr. 1045:25-1046:9 (Doc. 115).

Mr. Krueger, Mr. Jacobson, Mr. Kozel, Ms. Anderson, Ms. Davy, Ms. Morris, Ms. Apodaca, Mr. Jackson, Mr. Pechota, and Mr. Van Every also testified that Ms. Esperance was

disrespectful and disruptive during Forest Leadership Team meetings.  Tr. 598:23- 599:21 (Doc. 113); Tr. 830:16-831:6, 843:20-844:1, 848:20-849:14, 877:18-885:12, 921:12-18, 922:23-923:11, 951:16-954:3, 987:24-988:9, 1007:15-1008:5, 1007:15-1008:5 (Doc. 114); 1039:15-1042:10, 1067:1068:11 (Doc.115).  Of note, Ms. Davey described Ms. Esperance's behavior as "toe-curling," Tr. 922:23-923:7 (Doc. 114), and Ms. Morris stated Ms. Esperance made FLT meetings "cringeworthy." Tr. 953:3-7 (Doc. 114).

Co-workers and FLT members further testified that the BHRL project and decision was a source of conflict between Mr. Van Every and Ms. Esperance.  Jacqueline Buchanan, Mr. Krueger, Mr. Kozel, Ms. Anderson, Mr. Butler, Mr. Jackson, and Mr. Pechota all testified that BHRL was a source of ongoing conflict.  Tr. 551:4-552:14,  628:19-629:2 (Doc. 113); Tr. 850:8-24; 883:9-885:12; 935:22-936:8, 1007:15-1008:2, 1008:20-1012:9 (Doc. 114); Tr. 1039:15-1040:16 (Doc. 115).

Finally, it is noted that during Mr. Van Every's tenure, Northern Hills District Ranger Rhonda O'Byrne (a woman) was promoted to a position in the Washington Office, Karen Hartman (a woman) was appointed to serve  as the Acting Northern Hills District Ranger, Nancy Veres (a woman) was appointed to serve as Acting Mystic District Ranger following Ms. Esperance's reassignment, and District Ranger Tracy Anderson (a woman) continued to serve as the Hell Canyon District Ranger.  Tr.419:18-423:1 (Doc. 112).

There was no legally sufficient basis for a reasonable jury to find that Mr. Van Every discriminated against Ms. Esperance based on her gender.  As noted by the Court,  "[w]ith the exception of the plaintiff's testimony itself, which is mainly work-related, there wasn't anybody that believed that there was any gender discrimination.  At the core of this, that's troubling."  Tr. 1261:13-17 (Doc. 115).

**B.     As a Matter of Law, Plaintiff Is Not Entitled to an Inference of Pretext.**

In the event the Court finds a prima facie case of gender discrimination, the burden shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for Ms. Esperance's reassignment.  The burden of proof then shifts back to Ms. Esperance to show that the Defendant's proffered reasons were pretextual.  That is, Ms. Esperance must introduce sufficient evidence for a jury to find *both* that the Defendant's reasons were false, and that discrimination was the real reason.  *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (internal quotation marks and citation omitted) (stating "[t]o demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false *and* that discrimination was the real reason.") (emphasis in the original).  "[T]he plaintiff 'must do more than simply create a factual dispute as to the issue of pretext; [s]he must offer sufficient evidence for a reasonable trier of fact to infer discrimination.'"  *Id.* (quoting *Mathews v. Trilogy Commc'ns, Inc.,* 143 F.3d 1160, 1165 (8th Cir. 1998)).

Within this framework, the Court examines Ms. Esperance's evidence of pretext.  None of this evidence, individually or collectively, casts any doubt on Mr. Van Every's stated reasons for reassigning Ms. Esperance or establishes that Mr. Van Every was motivated by discriminatory animus.  Because Ms. Esperance failed to present sufficient evidence to demonstrate that Mr. Van Every's stated reasons for her reassignment were pretext for intentional discrimination, her claim fails as a matter of law.

**1.     Reassignment policy**

Ms. Esperance argued that the Defendant failed to follow a progressive discipline policy with respect to her reassignment.  But Ms. Esperance presented no evidence that progressive discipline was required prior to reassignment.  Conclusory arguments, without evidence, are

insufficient as a matter of law to establish a material question of fact.  *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 752 (8th Cir. 2011).   Moreover, the Defendant presented evidence that Ms. Esperance's temporary reassignment was a general reassignment at management's discretion and that her permanent reassignment to the Office of Strategic Planning was also a general reassignment, i.e., at the same grade, step, and pay, and inside her local commuting area.  Tr. 92:5-9 (Doc. 111); 338:15-346:14, 351:25-352:6 (Doc. 112); 555:25-556:11, 559:12-561:8, 682:3-685:22  (Doc. 113); 726:13-730:23, 749:18-750:7, 754:6-16 (Doc. 114); Doc. 107 at pp. 18-19 (Ex. 213); Doc. 107 at pp. 20-21 (Ex. 214).   Finally, Ms. Esperance's reassignment was not considered a disciplinary action.  Tr. 584:11-14 (Doc. 113).  Thus, failure to utilize progressive discipline prior to reassigning Ms. Esperance is not, as a matter of law, evidence of pretext.  *See EEOC v. Trans States Airlines, Inc*., 462 F.3d 987, 995 (8th Cir. 2006) (finding disciplinary policies and procedures did not support an inference of discrimination); *Lobato v. New Mexico Environment Dep't*, 733 F.3d 1283, 1291 (10th Cir. 2013) (stating where "progressive discipline is entirely discretionary," and the employer "did not ignore any established company policy in its choice of sanction, the failure to implement progressive discipline is not evidence of pretext").

### 2.      Performance history

Ms. Esperance emphasized her positive performance history.  However, "evidence of a strong employment history will not alone create a genuine issue of fact regarding pretext and discrimination."  *Main v.  Ozark Health, Inc.*, 959 F.3d 319, 326 (8th Cir. 2020) (quoting *Strate v. Midwest Bankcentere, Inc.,* 398 F.3d 1011, 1020 (8th Cir. 2005)).  As testified by Mr. Van Every, he gave Ms. Esperance a lower rating of fully successful because of concerns regarding her failure to support leadership decisions, conflicts with members of the Forest Leadership Team and members of the community, and because he did not want to negatively impact Ms. Esperance's

opportunity for future promotion within the Agency.  Tr. 1112:4-1113:23, 1125:12-1126:13 (Doc. 115); Doc. 107 at pp. 35-36 (Ex. 222).  Further, Ms. Esperance's reassignment was not because of marginal work performance or an inability to perform her duties as a district ranger, but rather because of her failure to follow supervisory directives.

### 3.  Legitimate, non-discriminatory reasons for reassignment

Ms. Esperance argued that Mr. Van Every gave inconsistent reasons for her reassignment, which she contends establishes pretext.  Under the McDonnell Douglas framework, once an employer articulates a nondiscriminatory reason for the employment action, the factual inquiry then shifts back to the employee to "present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *Lindeman v. Saint Luke's Hosp. of Kan. City*, 899 F.3d 603, 606 (8th Cir. 2018); *see also Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 638 (8th Cir. 2011) (internal quotation marks and citation omitted) ("When an employer articulates a nondiscriminatory reason for an [employment action,] the factual inquiry proceeds to a new level of specificity.").  "The showing of pretext … requires more than merely discrediting an employer's asserted reasoning for an [employment action].  A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 470 (8th Cir. 2011) (internal quotation marks and citations omitted).  Importantly, "[a]n employee's attempt to prove pretext requires more substantial evidence of discrimination than required to make a prima facie case because we view this evidence in light of the reasons articulated by the employer." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014 (citing *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 992 (8th Cir. 2006)).  "[T]he employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered

a 'phony excuse.'" *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1034 (8th Cir. 2005).  As the

Eighth Circuit has oft repeated, "federal courts do not sit as a super-personnel department that

reexamines an entity's business decisions." *Torlowei v. Target*, 401 F.3d 933, 935 (8th Cir. 2005).

In this case, the Defendant offered legitimate, non-discriminatory reasons for Ms.

Esperance's reassignment.  The Defendant identified significant issues regarding Ms. Esperance's

failure to follow supervisory directives, including Ms. Esperance's disagreement regarding the

treatment of 4A pine stands as authorized under the BHRL project and directed by Forest

Supervisor Mark Van Every.  Mr. Kozel, Ms. Anderson, Mr. Jackson, and Mr. Van Every all

testified that on a field trip to implement the BHRL decision, Ms. Esperance was confrontational,

disrespectful, and openly challenged Mr. Van Every's direction.  Tr. 850:8-853:23, 868:5-870:13,

1010:9-1012:18 (Doc. 114); Tr.1090:11-1091:20, 1092:9-1093:24 (Doc. 115); Doc. 107 at pp. 76-

78, 108 (Ex. 241 and 255).   Other than disputing the witnesses' testimony, Ms. Esperance offered

no evidence that the Defendant's reasons were false.

Further, the reasons cited for Ms. Esperance's reassignment did not change.  Shortly after

the field trip in question, Mr. Van Every participated in a telephonic meeting with Regional

Forester Brian Ferebee and Deputy Regional Forester Jacqueline Buchanan and advised them of

his intent to reassign Ms. Esperance.  During this telephonic meeting, Mr. Van Every informed

them of the field trip and Ms. Esperance's open confrontation and refusal to implement the BHRL

decision.  Tr. 551:4-552:14, 553:5-555:3 (Doc.113); Tr. 1118:2-22 (Doc. 115).  Mr. Ferebee

directed Mr. Van Every to consult with Employee Relations.  Tr. 555:4-16 (Doc. 113).

Mr. Van Every then conferred with Supervisory Employee Relations Specialist Jeanne

Weihrauch.  Tr. 555:17-24, 671:22-672:13, 681:23-682:2 (Doc. 113);  730:24-731:25 (Doc. 114);

Tr. 1118:23-1119:7 (Doc. 115).  Ms. Weihrauch, a subject matter expert, provided guidance on

the reassignment process.  Tr. 671:22-672:13, 672:22-678:22, 679:22-681:22 (Doc. 113); Tr. 1119:8-1120:7 (Doc. 115); Doc. 107 at pp. 43-51 (Ex. 227, 228, and 230).  Pursuant to Ms. Weihrauch's direction, the reassignment was to be processed as a general reassignment at management's discretion.  Tr. 555:25-556:11, 682:3-685:22 (Doc. 113); Tr. 735:8-736:21 (Doc. 114); Doc. 107 at p. 112 (Ex. 260).  Mr. Van Every relied upon Ms. Weihrauch's expert advice and Ms. Weihrauch was involved in the drafting of the letter of temporary reassignment.  Tr. 671:22-672:13, 672:22-678:22, 679:22-681:22 (Doc. 113); Tr. 744:11-745:1 (Doc. 114); Tr. 1118:23-1120:7 (Doc. 115);  *cf.* Doc 107 at pp. 43-45 (Ex. 227) and Doc. 108 at pp. 1-2 (Ex. 1). On October 26, 2018, Mr. Van Every delivered the letter to Ms. Esperance temporarily reassigning her to the position of Special Assistant to the Forest Supervisor.  Tr. 1117:10-24 (Doc. 115).

Following her temporary reassignment, Ms. Esperance was given the opportunity to identify a non-line position for permanent reassignment.  Doc. 1.  Ms. Esperance did not identify a position for which she wished to be considered for permanent reassignment, so Deputy Regional Forester Jacqueline Buchanan identified a position with the Office of Strategic Planning in the Regional Office located in Lakewood, Colorado.  Tr. 556:12-557:19, 559:12-15 (Doc. 113). Thereafter, Acting Supervisory Employee Relations Specialist Julie Nelson inquired regarding the basis for the reassignment.  Tr. 732:1-6 (Doc. 114).  During a telephonic meeting on November 30, 2018, as noted in her handwritten notes, Mr. Van Every informed Ms. Nelson that one of the reasons for Ms. Esperance's reassignment was her failure to follow supervisory guidance.  Tr. 737:8-738:4, 743:1-745:24 (Doc. 114); Tr. 1122:1-1123:16 (Doc. 115); Doc. 107 at p. 111 (Ex. 259).  It was Ms. Nelson's opinion, however, that Ms. Esperance's permanent reassignment to the Office of Strategic Planning would be a directed reassignment and requested further information regarding supervisory directives not followed and instances of Ms. Esperance's failure to manage

or supervise.[2]  Tr. 745:25-748:15 (Doc. 114); Doc. 107 at pp. 15-17 (Ex. 212).  Mr. Van Every

provided the requested information in an email dated December 10, 2018, and Ms. Nelson drafted

a second letter permanently reassigning Ms. Esperance to the position of Natural Resource

Specialist with the Office of Strategic Planning.  Tr. 748:16-749:11, 750:12-754:5 (Doc. 114); Tr.

1123:17-1124:20 (Doc. 115); Doc. 107 at pp. 1- 7 (Ex. 206 and 207).  Ultimately, Ms. Esperance's

permanent position with the Office of Strategic Planning was remote with a duty station of Custer,

South Dakota, and fell within the parameters of a general reassignment within management's

discretion.  Tr. 749:15-750:7, 754:6-16 (Doc. 114); Doc. 107 at pp. 18-19 (Ex. 213).  Mr. Van

Every delivered the letter of permanent reassignment to Ms. Esperance on February 1, 2019.  Tr.

1123:22-24 (Doc. 115); Doc. 108 at pp. 1-2 (Ex. 1).

Ms. Esperance presented no evidence that raised a genuine doubt as to the Defendant's

stated reasons for her reassignment.  Prior to and after Ms. Esperance's temporary reassignment,

Mr. Van Every repeatedly and consistently stated that one of the reasons for Ms. Esperance's

reassignment was her failure to follow supervisory directives.  Moreover, "[a] plaintiff must do

more than identify discrepancies or inconsistencies in an employer's rationale for terminating the

plaintiff to prove that the employer gave 'shifting explanations.'"  *Fatemi v. White*, 775 F.3d 1022,

1048 (8th Cir. 2015).  The change in explanation must be substantial.  *Id.*  If the employer gave

---

[2] Ms. Weihrauch was Ms. Nelson's supervisor.  Tr. 687:24-688:4 (Doc. 113); Tr. 730:24-731:5
(Doc. 114).  At the time of Ms. Esperance's temporary reassignment on October 26, 2018, Ms.
Weihrauch was on a 120-day detail and Ms. Nelson became the Acting Supervisory Employee
Relations Specialist.  Ms. Weihrauch testified that Ms. Nelson was not part of the initial
conversations regarding Ms. Esperance's reassignment and believes Ms. Nelson misunderstood
the nature of the reassignment.  Tr. 686:2-691:14 (Doc. 113); Tr.  731:24-735:10 (Doc. 114); Doc.
107 at p. 112 (Ex. 260).  Unfortunately, Mr. Van Every became caught in the middle of what
appears to be a personal conflict between Ms. Weihrauch and Ms. Nelson.  Tr. 687:24-688:4 (Doc.
113); Tr 735:8-737:2, 771:18-772:12 (Doc. 114).  Indeed, the Court noted the "inter-Nicaean war"
between the Human Resources staff.

"two *completely* different explanations" for its decision, then such a substantial change is established. *Trans States Airlines, Inc*., 462 F.3d at 995 (emphasis added). However, where the employer has not wavered from its explanation for the adverse employment action, there is no substantial change. *Id.*; *see also Gardner v. Wal-Mart Stores, Inc.*, 2 F.4th 745, 750 (8th Cir. 2021) (finding nature of explanation unchanged); *Sieden v. Chipotle Mexican Grill, Inc.*, 846 F.3d 1013, 1018 (8th Cir. 2017) (finding no pretext where employer merely "elaborated on" its consistent explanation); *Elam*, 601 F.3d at 881 (noting an employer may elaborate on its proffered explanation for an adverse employment action).

Here, differences between the letters of reassignment were the result of a disagreement between Ms. Weihrauch and Ms. Nelson. The direction given by two different Supervisory Employee Relations Specialists changed; the reasons for Mr. Van Every's reassignment of Ms. Esperance never changed. Mr. Van Every consistently and repeatedly stated that Ms. Esperance was reassigned because of her failure to follow supervisory directives.

## III.    MOTION FOR A NEW TRIAL OR FOR REMITTITUR

For the reasons set forth above, Defendant requests that the Court enter judgment in his favor as a matter of law. In the alternative, Defendant requests that the Court grant him a new trial. The authority to grant a new trial is within the discretion of the district court. *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). The trial court has the power "to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Id.* (citing *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612 (5th Cir. 1985). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Id.*

14

A. **The Court Erred by Allowing Plaintiff to Present Inadmissible, Irrelevant, and Unfairly Prejudicial "Me Too" Testimony.**

A court should grant a new trial pursuant to Rule 59 when a legal error results in a miscarriage of justice, which occurs when the court commits a prejudicial error, meaning one that likely affected the jury's verdict. *Valadez v. Watkins Motor Lines, Inc.*, 758 F.3d 975, 980 (8th Cir. 2013) (holding that admission of hearsay testimony of investigating officer's opinions and conclusions was improper and had a substantial influence on the jury's verdict). While an erroneous evidentiary ruling, "standing alone, may be insufficient to justify reversal," a judgment may be reversed if the "cumulative effect" is prejudicial. *See Malek v. Fed. Ins. Co.*, 994 F.2d 49, 55 (2d Cir. 1993), cited by *Ventura v. Kyle*, 825 F.3d 876, 886 (8th Cir. 2016).

In this case, the Court allowed Ms. Esperance to present evidence of alleged discrimination within Region 2. Over the Defendant's objection, Ms. Esperance was allowed to elicit testimony by Human Resource Specialist Jamie Barnes that there was a "trend of discrimination against females within Region 2." Tr. 131:7-138:17, 138:24-139:4 (Doc. 111). This testimony was irrelevant and unfairly prejudicial and, accordingly, its admission was clear error.

Testimony regarding unsupported allegations of discrimination by unnamed persons in Region 2 is inadmissible on the grounds that it is neither relevant nor material to the issue in this case, to wit, whether Mr. Van Every's decision to reassign Ms. Esperance was motivated by gender. Region 2 encompasses Colorado, Kansas, Nebraska, and most of South Dakota and Wyoming. Tr. 57:24-58:3 (Doc. 111). There are 13 national forests within Region 2. Tr. 1056:5-11 (Doc. 115). Mr. Van Every was responsible for the management of the Black Hills National Forest and had no authority to make personnel decisions on other national forests. Tr. 349:5-350:1 (Doc. 112). Actions and decisions by other managers within the region involving other employees are irrelevant to Mr. Van Every's decision to reassign Ms. Esperance. *See Sprint/United*

*Management Co. v. Mendelsohn*, 552 U.S. 379 (2008) (excluding "me-too" evidence of non-parties who worked in different departments and claimed age discrimination at the hands of different supervisors); *Adams v. Austal, USA, LLC*, 754 F.3d 1240, 1258 (11th Cir. 2014) (excluding "me too" evidence because alleged incidents of harassment were unrelated to plaintiffs' supervisor); *Schrand v. Federal Pacific Elec. Co.*, 851 F.2d 152, 156 (6th Cir. 1988) (excluding evidence regarding the discharge of other employees where they were discharged by different management than the plaintiff), abrogated on other grounds by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

Moreover, even if the evidence had been relevant or material, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, likely confusion of the issues, and risk that the jury would be misled. Admission of this testimony created a significant danger that the jury would base its assessment of liability on unsupported allegations of discrimination in Region 2.[3]

This error was further compounded by improper references by plaintiff's counsel to other reassignments in violation of the Court's ruling on motions in limine. The Court previously granted the Defendant's Motion in Limine to exclude evidence of other reassignments by Mr. Ferebee. Doc. 90, ¶ 2.f. Yet, over the Defendant's objection, plaintiff's counsel *repeatedly* referenced other reassignments. Mr. Gebhardt posed the following questions to Ms. Barnes:

---

[3] It is believed Ms. Barnes testimony regarding "a trend of discrimination" was in reference to the other reassignments which were excluded from evidence and the subject of discussion in email correspondence between Ms. Barnes and Ms. Nelson. Doc. 108 at pp. 266-267 (Ex. 178). Additionally, by way of basic evidentiary foundation, legal counsel never established by direct evidence or reasonable inference that Ms. Barnes had personal knowledge regarding instances of sex discrimination in Region 2. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

| | |
|---|---|
| Gebhardt: | Okay.  Did you observe any gender discrimination at the Forest Service? |
| Ramsdell: | Objection.  Motion in limine. |
| Court: | Just a moment.  Sustained. |
| Gebhardt: | *Without talking other reassignments*, did you observe—any other— |
| Ramsdell: | Objection. |
| Court: | Just a moment.  He hasn't finished asking the question yet. |
| Gebhardt: | *Without talking about other reassignments by Van Every or Ferebee or management—we're not talking about other reassignment—* |
| Barnes: | Okay. |
| Gebhardt: | *--so let's put that in a box.  We're not talking about—without talking about other reassignments,* you know, besides Ruth Esperance, have you observed gender discrimination otherwise at the Forest Service? |
| Barnes: | As an HR, you see a lot of everything that's happening.  I would for a—in an HR, it's just naturally a female dominated profession.  And being in HR, everyone comes to you with all of their problems.  And so for you to give them advice.  And I would say that, yes, I did see trends of females being discriminated against. |
| Gebhardt: | Who were— |
| Ramsdell: | Objection.  Relevance.  Move to strike that answer. |
| Court: | Just a moment.  We have an objection. |
| Ramsdell: | It's irrelevant, and I move to strike that answer. |
| Court: | Just a moment.  I didn't ask for argument.  Remember that? |
| Gebhardt: | Yes, sorry. |
| Court: | The objection was? |
| Ramsdell: | Relevance. |
| Court: | Sustained with regard to the breadth of the question.  Go ahead. |

17

Gebhardt:      To your knowledge, which women were discriminated against:

Ramsdell:      Objection.  Motion in limine.

Gebhardt:      *How is that a motion in limine?  It's other reassignments.*

Court:      Just a moment.  We'll have our discussions out of the presence of the jury.

Tr. 131:7-133:5 (Doc. 111) (emphasis added).[4]

The next morning, upon further objection, the Court gave a limiting instruction that the jury was "to disregard references to other reassignments, as the Court has previously ruled that evidence related to those reassignments must be excluded as irrelevant to Ms. Esperance's claim." Tr. 188:15-25 (Doc. 112).  Unfortunately, however, you cannot "unring the bell."  The purpose of a motion in limine is to avoid the futile attempt to "unring the bell" when jurors have seen or heard inadmissible evidence.  *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003) (Berzon, J., dissenting) (citations omitted) (dissenting from decision rejecting petitioner's ineffective assistance of counsel claim).  "If prejudicial matters are brought before the jury, no amount of objection or instruction can remove the harmful effect, and the [party] is powerless unless he wants to forego his chance of a trial and ask for a mistrial.  Once the question is asked, the harm is done." *Kjerstad v. Ravellette Publications*, 517 N.W.2d 419, 426 (S.D. 1994) (quoting *Lapasinskas v. Quick*, 170 N.W.2d 318, 319 (1969) (holding violation of motions in limine prejudiced plaintiff and denied him a fair trial)); *see also Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999) (noting

---

[4] Counsel's claim that his questions sought to prevent the witness from unwittingly mentioning other reassignments is disingenuous.  *See* Tr. 157:21-158:14 (Doc. 111).  It is the government's understanding that plaintiff's legal counsel met with Ms. Barnes the night before her testimony. Counsel could and should have advised Ms. Barnes of the Court's prior ruling at that time. Furthermore, Assistant United States Attorney Michaele S. Hofmann previously advised Ms. Barnes regarding the Court's prior ruling.

18

that "[m]otions in limine are designed to avoid the delay and occasional prejudice caused by objections and offers of proof at trial"); *United States v. Hamdan*, 537 F. Supp. 3d 870, 878-79 (E.D. La. 2001) (quoting *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306, fn 1 (5th Cir. 1977) (stating the purpose of a motion in limine is to prohibit opposing counsel "from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds")).

Counsel's improper and repeated reference to other reassignments suggested to the jury that Mr. Van Every was involved in making other "questionable" reassignments.  Plaintiff's counsel flouted the Court's prior ruling and introduced irrelevant and prejudicial evidence into the trial.

Indeed, despite the Court's prior ruling in limine, extensive argument, and limiting instruction to the jury—of which Ms. Esperance was aware—she continued and repeatedly sought to introduce evidence of other reassignments.  Ms. Esperance testified:

> Hofmann:    Well, would it surprise you that Tracy Anderson disagrees with your opinions?
>
> Esperance:  I can't speak for Tracy.  I'm just speaking for myself.  And I know what I was doing at the time was trying to stop these kind of actions, *because I've been informed of other—*
>
> Hofmann:    Objection.  Objection.  Nonresponsive.
>
> Court:      Sustained.

Tr. 350:24-351:7 (Doc. 112).

Ms. Esperance further testified:

> Hofmann:    And you, in fact never called the Harassment Reporting Center?

| | |
|---|---|
| Esperance: | I didn't *because I was informed by another female that was removed* that she did that action— |
| Hofmann: | Objection.  Hearsay.  Nonresponsive.  Move to strike. |
| Gebhardt: | It's not hearsay, Your Honor. |
| Court: | We didn't get to what she said, so denied.  Stands. |
| Hofmann: | My question, Ms. Esperance, is you did not—I'm not asking you why.  I'm asking you, you did not call the Harassment Reporting Center. |
| Esperance: | I did not call it because *I was informed by another female that was removed* that did call the harassment line and that harassment report went to the person that she was claiming was in the supervisory line of responsibility, and they responded.  So it's kind of like a fox in the chicken coop kind of thing.  And it didn't work for her.  It got her nothing, no action.  So I applied that to my situation, and I opted to go a different route. |
| Hofmann: | Objection.   Same objection.   Move to strike.   Nonresponsive. Hearsay. |
| Court: | The answer is stricken.  It's not responsive.  Disregard the answer. |

Tr. 385:1-24 (Doc. 112) (emphasis added).

Plaintiff's counsel also continued to attempt to introduce irrelevant and prejudicial evidence regarding unsubstantiated allegations of discrimination and harassment by other managers and involving other employees.   As a result, defense counsel was compelled to repeatedly object.  Unfortunately, an objection often alerts the jury to the very thing that should not be considered.  For example, during Ms. Haas' testimony, Mr. Gebhardt posed the following questions:

| | |
|---|---|
| Gebhardt: | Did you observe any mistreatment of women at the Forest Service? |
| Haas: | Yes. |
| Gebhardt: | Okay.  Can you elaborate? |
| Haas: | I had a former supervisor who behaved inappropriately towards me. |
| Hofmann: | Objection.  Relevance. |
| Court: | Sustained. |

| | |
|---|---|
| Gebhardt: | Well, lets me try this, Judge. |
| | Did you feel sexually harassed? |
| Hofmann: | Objection.  Same Objection.  Relevance. |
| Court: | Sustained. |
| Gebhardt: | Did you feel mistreated as a woman? |
| Hofmann: | Same Objection. |
| Court: | Sustained. |
| Gebhardt: | Do you feel that this was gender discrimination? |
| Hofmann: | Same objection, Your Honor. |
| Court: | Sustained. |
| Gebhardt: | This person that you've referred to is a man? |
| Hofmann: | Same objection, Your Honor.  This is irrelevant to this case. |
| Court: | Sustained. |
| Gebhardt: | *Did you report this – any of the – so we can't talk about it.*  That sustained means we can't talk about these issues.  Right?  Or at least my questions? |
| | Did you ever report anything about this? |
| Hofmann: | Same objection, Your Honor. |
| Court: | Sustained. |
| Gebhardt: | Your Honor, I'm going to make it a formal exception on the record. |
| Court: | You may. |
| Gebhardt: | You wouldn't want me to say anything except that.  Right? |
| Court: | That's right. |
| Gebhardt: | Thank you.  And I will hold to that. |
| Court: | Because you have a record anyway. |
| Gebhardt: | Right.  I mean, I could make a proffer, but I understand that would Don't. |
| Court: | -- you would not want that. |
| Gebhardt: | |
| Court: | You can make a proffer later on out of the presence of the jury.  But we don't do that in front of the jury. |
| Gebhardt: | Right. |
| | Okay.  *Well, we have this one instance that you've brought up which we cannot talk about.*  That's A.  So let's go to B.  Let's move on. |
| | Would you put Ruth's removal from her position the same category? |
| Hofmann: | Objection, Your Honor. |
| Court: | Sustained. |
| Gebhardt: | *Besides the situation that you first referenced, which we're not going to discuss* – well, okay.  Back up.  Withdrawn. |
| | I first asked you about mistreatment of women, and you said yes, that you have examples.  Are there any other examples? |
| Hofmann: | Your Honor, same objection, and move to strike. |
| Court: | Sustained.  We're not going to have many trials with regard to anything else.  That's my ruling.  Move on. |

Tr. 535:15-538:6  (Doc. 113) (emphasis added).   Despite the defense's sustained objections, plaintiff's counsel continued the drumbeat of unsubstantiated allegations of discrimination and harassment by other managers and involving other employees, which were clearly irrelevant to Ms. Esperance's claim.   Moreover, plaintiff's counsel drew further attention to these allegations by telling the jury "we can't talk about it."  This constant drumbeat without doubt tainted the lens through which the jury viewed the *admissible* evidence in this case.

Finally, the Court's error was further exacerbated by counsel's closing argument regarding a "culture" of discrimination in Region 2.  Mr. Gebhardt argued over objection:

Gebhardt:     Where are the witnesses up holding his integrity?  They have a witness saying what she says is true, meaning here if she says there's discrimination, that's valid.  We also have a witness, if you recall, saying there's a culture of discrimination.  That was the second one, Jamie Barnes.  There's a culture of discrimination that the entire region that they were in.  The entire Region 2, that they are in of the Forest Service.  Culture of not just her, but generally. …

Okay.  What else?  Besides all that, which is the main analysis of the case, there's also evidence of discrimination, in addition.  And that's evidence of discrimination, too, that maybe tips the scales.  I don' know.  Right?  So you'll have to think about that.

So you've heard there's a culture of discrimination in the entire region against women. …

Tr. 1273:17-1274:14 (Doc. 115).

A court should grant a new trial pursuant to Rule 59 when a legal error results in a miscarriage of justice, which occurs when the court commits a prejudicial error, meaning one that likely affected the jury's verdict.  The Court erred in allowing Ms. Barnes testimony that there was a "trend of discrimination against females within Region 2."  This prejudicial error, in concert with improper and repeated references by plaintiff's counsel and Ms. Esperance regarding other reassignments and unsubstantiated allegations of discrimination and harassment by other managers

and involving other employees, likely affected the jury's verdict.  As a result, the jury was left with the erroneous impression that Mr. Van Every was involved in the reassignment of other women and that he was part of a pattern of discrimination against women in Region 2.[5]

The prejudicial effect of Ms. Barnes testimony was further amplified because of the lack of evidence of discrimination in this case.  If there had been overwhelming admissible evidence that Mr. Van Every had discriminated against women, the prejudicial effect of the evidence would have been slight and the error harmless.  In this case, however, there was no evidence of gender discrimination.   Therefore, the judgment should be reversed, and the Defendant granted a new trial.

### B.      The Verdict Is Unsupported by the Weight of the Evidence.

In determining whether to grant a new trial based on sufficiency of the evidence, the Court "can rely on its own reading of the evidence – it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict.'"  *Ryan by Ryan v. McDonough Power Equipment, Inc.*, 734 F.2d 385, 387 (8th Cir. 1984) (citations omitted); *see also Rodrick v. Wal-Mart Stores East, L.P.*, 666 F.3d 1093, 1096 (8th Cir. 2012) (stating a district court has wide discretion in deciding whether to grant a new trial).  As discussed above, the Court should order a new trial because the jury's verdict was against the great weight of the evidence.  Evidence of discrimination was non-existent, or scant at most.  As noted by the Court, "[w]ith the exception of the plaintiff's testimony itself, which is mainly work-related, there wasn't anybody that believed that there was any gender discrimination.   At the core of this, that's

---

[5] Indeed, a reporter sitting in the audience questioned whether Mr. Van Every was a part of the purported "trend of discrimination" following Ms. Barnes testimony.

troubling." Tr. 1261:13-17 (Doc. 115). Therefore, the judgment should be reversed, and the Defendant granted a new trial.

C.     **The Award of Compensatory Damages Is Unsupported by Competent Evidence.**

The Defendant requests that the Court either vacate or remit the jury's award of compensatory damages. "A decision to grant remittitur 'is a procedural matter governed by federal, rather than state law.'" *Taylor v. Otter Tail Corp.*, 484 F.3d 1016, 1018-19 (8th Cir. 2007) (quoting *Parsons v. First Investors Corp.*, 122 F.3d 525, 528 (8th Cir. 1997)). A court is not at liberty to supplant its own judgment on the damages amount for the jury's findings. *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1030 (Fed. Cir. 1996). Therefore, in holding that a jury damage award is excessive, a court may reverse the jury award and order a new trial or allow a plaintiff the option of agreeing to remittitur in an amount determined by the court. *Id.*; *see also Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1212 (8th Cir. 1999). A new trial is favored over a remittitur when a court finds that passion or prejudice has influenced a jury's damage award on the theory that such passion or prejudice may also have influenced the jury's determinations in other phases of the trial. *Tedder v. American Railcar Indus., Inc.*, 739 F.3d 1104, 1110-11 (8th Cir. 2014).

A district court may order remittitur as a condition of denying a motion for new trial if "the verdict is so grossly excessive as to shock the court's conscience." *Estes v. Time Insurance Co.*, 980 F.2d 1228, 1235 (8th Cir. 1992); *see also Slatton v. Martin K. Eby Construction Co.,* 506 F.2d 505, 509 (8th Cir. 1974); *cert denied*, 421 U.S. 931 (1975) (court should grant remittitur when the "the verdict is so unreasonably high as to result in a miscarriage of justice, or … is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate"). Whether an award is excessive rests within the discretion of the trial court. *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 869 (8th Cir. 2006).

The jury's award of $400,000 for Ms. Esperance's emotional distress is excessive in light of the evidence in this case.[6]  In a single page of transcript, Ms. Esperance stated she was emotionally devastated and suffered from depression and anxiety.  Ms. Esperance further stated that she experienced what she described as "just minor health issues," such as trouble sleeping and grinding of her teeth.  Tr. 327:18-328:24 (Doc. 112).  Aside from Ms. Esperance's brief and conclusory testimony, however, she offered no supporting evidence.  Ms. Esperance suffered no physical injury, she was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress.  *See Kucia v. Southeast Ark. Comm. Action Corp.*, 284 F.3d 944, 947 (8th Cir. 2002) (internal quotation marks and citation omitted) ("An award of damages for emotional distress must be supported by competent evidence of 'genuine injury.'").  She also did not testify to the severity or duration of any physical symptoms and admitted that she ground her teeth prior to her reassignment.  Tr. 419:1-6 (Doc. 112).  Ms. Esperance's evidence of emotional distress was insufficient to support a verdict of $400,000.

It is further noted that aside from Ms. Esperance's reassignment from the position of District Ranger little else occurred.  She continued to be employed by the Forest Service at the same grade, step, and pay, and she remained inside her local commuting area.  Tr. 92:5-9 (Doc. 111); 338:15-346:14, 351:25-352:6 (Doc. 112); 555:25-556:11, 559:12-561:8, 682:3-685:22 (Doc. 113); 726:13-730:23, 749:18-750:7, 754:6-16 (Doc. 114); Doc. 107 at pp. 18-19 (Ex. 213); Doc. 107 at pp. 20-21 (Ex. 214).  In fact, Ms. Esperance currently works for the Forest Service as a Public Affairs Specialist with supervisory duties.  Tr. 354:3-355:4 (Doc. 112).

---

[6] Ms. Esperance did not suffer any lost wages and there was no evidence of reputational harm. *See* Tr. 1321:20-1322:16; Jury Instruction No. 13 regarding damages.

The award of emotional distress damages in this case is also contrary to the great weight of federal decisional authority denying the recovery of emotional distress damages in Title VII cases involving the type and quantum of evidence as adduced here.  For example, in *Price v. City of Charlotte*, 93 F.3d 1241 (4th Cir. 1996), cert. denied, 520 U.S. 1116 (1997), the Fourth Circuit, following a detailed review of the law of compensatory damages for emotional distress, reversed an award of compensatory damages for emotional distress to several policemen who brought a successful suit for discrimination under federal law.  While the Price court allowed that a plaintiff's testimony of emotional distress "standing alone" may sometimes support an award of emotional distress damages, it emphasized the anomalous nature of cases where that has been found to be sufficient.  *Id.* at 1251-52.

Equally, the case law reveals that courts scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony.  *See, e.g., Biggs v. Village of Dupo*, 892 F.2d 1298, 1304 (7th Cir. 1990) (remitting compensatory damages based on emotional distress claim for want of sufficient evidence); *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986) (affirming remittitur of jury award of $22,060 for emotional distress because plaintiff's testimony was too speculative to support the verdict); *Cohen v. Bd. of Educ., Smithtown Cent. Sch. Dist.*, 728 F.2d 160, 162 (2d Cir. 1984) (holding the plaintiff was not entitled to recover "any substantial sum" based on emotional distress because proof was so lacking); *Nekolny v. Painter*, 653 F.2d 1164, 1172-73 (7th Cir. 1981), cert. denied, 455 U.S. 1021 (1982) (reversing award of damages for emotional harm, stating that "[a] single statement by a party that he was 'depressed,' 'a little despondent,' or even 'completely humiliated,' was not enough to establish injury even when considered along with the facts of the case"); *Hetzel v. Cnty. of Prince William*, 89 F.3d 169, 171-72 (4th Cir.1996) (reversing and

remanding excessive compensatory damages award in a Title VII and 1983 suit where it was based "almost exclusively" on plaintiff's conclusory testimony).

Finally, the damage award in this case is out of bounds with awards in cases involving similarly alleged emotional damages. Ms. Esperance's claim may be fairly characterized as one for "garden variety" emotional damages. In garden variety emotional distress claims the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating to the severity or consequences of the injury. *See Olsen v. County of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009). Because such claims typically lack extraordinary circumstances and are not supported by any medical corroboration, "garden variety" emotional distress claims generally merit awards ranging from $30,000 to $125,000. *Id; see also Travers v. Flight Servs. & Sys.*, 808 F.3d 525 (1st Cir. 2015) (affirming district court's remittitur of emotional distress damage award from $400,000 to $50,000 for "garden variety" emotional distress); *Stamf v. Long Island R.R.*, 761 F.3d 192 (2d Cir. 2014) (ordering remittitur of damages for emotional distress from $200,000 to $100,000 where damages were more than garden variety); *Duarte v. St. Barnabas Hosp.*, 341 F. Supp.3d 306 (S.D.N.Y. 2018) (granting a remittitur of a compensatory damages award from $624,000 to $125,000 where the "[p]laintiff's vague and subjective complaints of insomnia, lower self-esteem, depression, anxiety, and stomach aches and headaches—unsupported by medical corroboration—establish[ed] no more than 'garden-variety' emotional distress"); *Vera v. Alstom Power, Inc.*, 189 F.Supp.3d 360 (D. Conn. 2016) ($500,000 non-economic damages award remitted to $125,000 because "garden variety" emotional distress); *Austin v. Rosewood, LLC,* No. 3:15-cv-40-MCR/CJK, 2018 WL 10509 (N.D. Fla. Feb. 15, 2018) (order of remittitur of damages for emotional distress from $175,000 to $25,000 because evidence insufficient to support verdict); *Stone v. Geico Gen. Ins.*

27

*Co.*, No. 8:05-cv-636-T-30TBM, 2009 WL 3720954 (M.D. Fla. Nov. 5, 2009) (reducing emotional distress award in age retaliation case from $200,000 to $50,000 for "a garden variety emotional distress claim" with no psychological counseling or medical treatment).

Based on the evidence at trial, the jury's award of $400,000 for Ms. Esperance's emotional distress is excessive and should be substantially remitted.

> **D.    The Jury's Award for Non-Pecuniary Compensatory Damages Must Be Reduced to $300,000 Pursuant to 42 U.S.C. § 1981a.**

The jury awarded $400,000 for non-pecuniary compensatory damages (emotional pain and mental anguish). However, federal law limits non-pecuniary compensatory damages to $300,000 in Title VII claims.

> The sum of the amount of compensatory damages … for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses … shall not exceed, for each complaining party … in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3).

Here, the jury's award of $400,000 for non-pecuniary compensatory damages exceeds the statutory cap. <u>As a matter of law, Ms. Esperance is entitled to no more than $300,000 for non-pecuniary compensatory damages</u>. Therefore, in the event the Court denies Defendant's motion for a new trial or remittitur, he seeks amendment of the judgment reducing the damages awarded to $300,000.

## IV.    CONCLUSION

Defendant is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) because there was no evidence of discrimination and Plaintiff failed to present legally sufficient evidence of pretext. In the alternative, Defendant is entitled to a new trial or remittitur under Federal Rule of Civil Procedure 59 because prejudicial error tainted the jury's

28

verdict, the verdict was against the weight of the evidence, and the damage award was excessive.

Additionally, the judgment must be amended to conform to the statutory cap of $300,000 for non-pecuniary compensatory damages pursuant to 42 U.S.C. § 1981a.

Dated this 20th day of October, 2023.

ALISON J. RAMSDELL
United States Attorney

 */s/ Michaele S. Hofmann*
Michaele S. Hofmann
Assistant United States Attorney
515 Ninth Street, Suite 201
Rapid City, SD 57701
Phone: (605) 342-7822
Fax: (605) 342-1108
Michaele.Hofmann@usdoj.gov