UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RUTH ESPERANCE,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS J. VILSACK, Secretary of Agriculture, U.S. Department of Agriculture,<br><br>Defendant. | 5:20-CV-05055-LLP<br><br><br><br>MEMORANDUM OPINION AND ORDER ON POST-TRIAL MOTIONS |

This Title VII gender discrimination case was tried to a jury beginning on September 18, 2023. The jury returned a verdict for Plaintiff and awarded damages in the amount of $400,000 on September 23, 2023. Defendant has renewed his motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. (Doc. 122.) In the alternative, Defendant moves for a new trial or remittitur under Rule 59. Additionally, Defendant moves to amend the judgment to conform to the statutory cap of $300,000 for compensatory damages pursuant to 42 U.S.C. § 1981a. Plaintiff agrees that the damage award must conform to the $300,000 statutory cap under Title VII, but Plaintiff opposes Defendant's motions for judgment as a matter of law and new trial or remittitur. (Doc. 131.)

The background is set forth in the Court's previous Memorandum Opinion and Order and it will not be repeated here. (Doc. 91.)

**DISCUSSION**

I. **Motion for Judgment as a Matter of Law**

A. **Standard of Review**

"Rule 50(b) provides for post-trial renewal of a Rule 50(a) trial motion for judgment as a matter of law." *Nassar v. Jackson*, 779 F.3d 547, 551 (8th Cir. 2015). "Under Rule 50, if the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for a party on an issue, the court may grant a motion for judgment as a matter of law against the party." *Howard v. Mo. Bone & Joint Ctr., Inc.*, 615 F.3d 991, 995 (8th Cir. 2010) (quoting Fed. R. Civ. P.

50(a)) (internal quotation marks omitted). The court should review all of the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 148–151 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 150. "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.

Though courts typically analyze Title VII discrimination cases under the burden-shifting analysis of *McDonnell Douglas* at the summary judgment stage, after all the evidence has been presented at trial, the inquiry should focus on the ultimate issue of intentional discrimination, not on any particular step in the *McDonnell Douglas* framework. *See Weber v. Strippit, Inc.,* 186 F.3d 907, 917–18 (8th Cir. 1999); *Gilkerson v. Toastmaster, Inc.,* 770 F.2d 133, 135 (8th Cir. 1985). "Title VII has been interpreted to require only that, in addition to the first three elements of a prima facie case, the plaintiff demonstrate that his or her discharge occurred in 'circumstances which allow the court to infer unlawful discrimination.'" *Walker v. St. Anthony's Medical Center,* 881 F.2d 554, 558 (8th Cir. 1989) (quoting *Craik v. Minnesota State University Board,* 731 F.2d 465, 469 (8th Cir.1984)).[1]

Under Title VII, "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was *a motivating factor* for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m) (emphasis added). Therefore, in order to prove intentional discrimination based on sex, a plaintiff is not required to show gender was the sole reason for the employer's adverse action. Rather, a plaintiff need only demonstrate that gender was at least one of the motivating factors for the decision. *See generally University of Texas Southwestern Medical Center v. Nassar,* 570 U.S. 338 (2013) (discussing Title VII's "motivating-factor" standard for race, color, religion, sex, and national origin discrimination).

---

[1] A prima facie case of discrimination requires a plaintiff to show she: "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination." *Davis v. Jefferson Hosp. Ass'n,* 685 F.3d 675, 681 (8th Cir. 2012). The first three elements were not disputed at trial in this case.

Thus, the ultimate question for purposes of Defendant's motion for judgment as a matter of law is whether there is sufficient evidence to support the jury's finding that Plaintiff's gender was a motivating factor in Defendant's decision to transfer Plaintiff out of her ranger position.

### B. Discussion

Plaintiff did not present direct evidence of discriminatory intent in this case. Instead, Plaintiff relied on indirect evidence. Compared to direct evidence, indirect evidence provides a weaker causal link between the employer's alleged discriminatory intent and the adverse action, but it may nonetheless establish discrimination. *Robinson v. Am. Red Cross*, 753 F.3d 749, 756 (8th Cir. 2014).

The Court will examine whether Plaintiff presented sufficient evidence permitting the jury to infer that discrimination was a motivating factor in Defendant's decision to remove Plaintiff from the ranger position.

#### 1. Evidence Permitting Inference of Discrimination

The jury was instructed that "the plaintiff's gender was a 'motivating factor' if the plaintiff's gender played a part or a role in the defendant's decision to reassign the plaintiff. However, the plaintiff's gender need not have been the only reason for the defendant's decision to reassign plaintiff."[2] (Doc. 100, Instruction No. 9.)

Plaintiff testified that Mark Van Every gave more favorable treatment to her male coworkers. (TT, Doc. 112, p. 315.) Plaintiff described how Mr. Van Every would dismiss her input on natural resource management topics during meetings, but he would praise a male co-worker if he brought up the same idea. (*Id.*, p. 316.) Plaintiff discussed a time where Mr. Van Every asked her male colleague to present information on one of Plaintiff's own projects called Star of the West. The practice was to have the ranger in charge of the program present the information, so Plaintiff should have been the one to present on Star of the West instead of the male ranger. Mr. Van Every never did that to a male. (*Id.*, pp. 319-20.) Plaintiff also testified that she applied for a temporary deputy forest supervisor job under Mr. Van Every, but a male colleague was selected. (*Id.*, pp. 326-28.)

Defendant refers to Plaintiff's testimony as "self-serving," and argues that Plaintiff's own testimony about treatment by Mr. Van Every, standing alone, is insufficient to establish

---

[2] This instruction is based on the Eighth Circuit's Model Civil Jury Instruction 5.21.

3

discrimination. But the credibility to be given a witness and the weight to be given her testimony is decided by the jury. *See, e.g. United States v. Maynie*, 257 F.3d 908, 918 (8th Cir. 2001) (noting that bias is a matter implicating a witness's credibility and the weight to be given the testimony, which are matters within the province of the jury). In this case, the jury was instructed:

> As stated earlier, in deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, or only part of it, or none of it.
> You may consider the intelligence of the witness; the opportunity the witness had to see or hear the things testified about; the memory, knowledge, education, and experience of the witness; any reasons the witness may have for testifying a certain way; how the witness acted while testifying; whether the witness said something different at another time; the general reasonableness of the testimony; and the extent to which the testimony is consistent with other evidence you believe.

(Doc. 100, Instruction No. 4.) Plaintiff's testimony about Mr. Van Every's conduct was specific and concrete, showing circumstances that could give rise to an inference of discriminatory animus. The jury was entitled to believe Plaintiff's testimony about Mr. Van Every's more favorable treatment of males.

Plaintiff also testified about the meeting with Mr. Van Every and Mr. Krueger for her performance evaluation on October 26, 2018. (TT, Doc. 112, p. 236.) Mr. Van Every told Plaintiff she did a good job, and he gave her a "fully successful" rating. (*Id.*, p.237.) In fact, Mr. Van Every had awarded Plaintiff with a certificate of merit in January of 2018. (*Id.*, p. 254.) But after Mr. Van Every gave Plaintiff the positive rating, he relieved her of the Mystic District ranger position. (*Id.*, pp. 255-56.) Mr. Van Every did not give Plaintiff a reason for removing her - - he said it was not based on performance or misconduct. (*Id.*, p. 256.) Plaintiff was directed to turn over her keys and she was escorted out of the building. She was told to meet Mr. Krueger the next day, which was a Saturday, to collect her personal belongings. (*Id.*, pp.256-57.) Plaintiff testified that this was devastating and shocking to her - - she had no prior discipline or performance warnings, and she had no idea this was coming. (*Id.*, pp. 255-56.)

After Plaintiff's transfer, the Mystic District ranger position was filled temporarily by Mr. Krueger, then by a female ranger. After the hiring process the Mystic District ranger position was permanently filled by a man named Jim Gubbels. (TT, Doc. 115, p. 167.)

Plaintiff's witnesses described her work as excellent. One example is the testimony of David Valenzuela. Mr. Valenzuela worked as zone hydrology manager in the Black Hills National

Forest from 2015 to 2020. (TT, Doc. 113, pp. 495-96.) During those five years, Mr. Valenzuela worked in both the Mystic District with Plaintiff and in the Hell Canyon District with a different female ranger. (*Id.*) At the time of trial, Mr. Valenzuela was retired after 33 years with the Forest Service and other similar federal agencies. (*Id.*, p. 495.) He described being shocked when Plaintiff was removed from the ranger position because she was an "exemplary leader," one of the best he had ever worked for. (*Id.*, pp. 501, 509.)

In addition, Shirlene Haas described Plaintiff as "by far the very best" of all of the district rangers she had worked with throughout her career. (*Id.*, p. 539.) Ms. Haas worked as a recreation specialist for the Forest Service in the Black Hills for the last 25 years of her career until she retired in 2019. (*Id.*, p. 513.) She began working with Plaintiff in the Mystic Ranger District in 2012. (*Id.*, p. 514.) Ms. Haas said people were "stunned" and "hurt" when Mr. Van Every announced that Plaintiff was no longer the district ranger. (*Id.*, p. 539.)

Eric Scott, the Mystic District forester who worked with Plaintiff and served on the Forest Leadership Team with her, testified about Plaintiff's professionalism at work, even when she voiced opinions that differed from "leadership's opinions." (TT, Doc. 112, p. 439.)

Jamie Barnes worked in Denver as a lead human resources specialist for Defendant from 2016 to 2019. Ms. Barnes testified that she questioned Mr. Van Every's reassignment of Plaintiff in part because he had given Plaintiff a monetary award based on her good performance less than six months prior to her reassignment. (TT, Doc. 111, pp. 127-28.)

The evidence of Plaintiff's excellent work, leadership, and professionalism, Mr. Van Every's treatment of Plaintiff in the workplace, including the circumstances of her removal from the ranger position and the building, and the fact that Plaintiff's position ultimately was filled with a male, gave the jury a legally sufficient basis to infer that Plaintiff's gender was a motivating factor in her reassignment. The verdict depended on credibility determinations, and it is the task of the jury, not of this Court, to weigh the evidence and to believe, or disbelieve, the witnesses.

### 2. Evidence of Pretext

A plaintiff may show intentional discrimination "by showing that the employer's proffered reason is unworthy of credence." *Reeves*, 530 U.S. at 143 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). In other words, evidence that calls into question the truthfulness of the employer's proffered explanation for the adverse action permits a jury to conclude that the employer discriminated on a prohibited basis. *See Putnam v. Unity Health*

*System*, 348 F.3d 732, 736 (8th Cir. 2003) (evidence of pretext can also be evidence allowing an inference of discrimination); *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 801 (8th Cir. 1994) (evidence discrediting employer's nondiscriminatory explanation "might serve double duty" by permitting an inference that discrimination was a motivating factor for the adverse action.) Accordingly, the evidence of pretext discussed below also supports an inference of gender discrimination.

There is no dispute that Mr. Van Every proffered legitimate, nondiscriminatory reasons for removing Plaintiff from the ranger position. Among other things, Mr. Van Every claimed that Plaintiff's behavior in meetings could be disruptive, that she was insubordinate at times, and that she had conflicts with other employees and members of the public. Mr. Van Every testified that the "tipping point" for his decision to remove Plaintiff from the ranger position and reassign her occurred during a field trip in September of 2018. (TT, Doc. 115, pp. 1082-1094.) Mr. Van Every said that Plaintiff announced in front of approximately 40 other employees that she would not cut any further 4A tree stands despite his direction to do so.

The jury in this case was instructed: "You may find that the plaintiff's gender was a motivating factor in the defendant's decision if it has been proved that the defendant's stated reasons for its decision are not the real reason, but are a pretext to hide discrimination on the basis of gender."[3] (Doc. 100, Instruction No. 10.)

Pretext can be shown in various ways, including "showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). "The touchstone inquiry remains whether circumstances permit a reasonable inference of discrimination." *Lewis v. Heartland Inns of America, L.L.C.*, 591 F.3d 1033, 1040 (8th Cir. 2010).

Plaintiff presented evidence of pretext. She rebutted Mr. Van Every's allegation that her refusal to cut 4A stands with younger regeneration was the "tipping point" for his decision to transfer her out of the ranger position. Plaintiff testified that she never refused to cut 4A stands. Eric Scott, a forester in the Mystic District who worked with Plaintiff and who also attended the

---

[3] This instruction is the definition of pretext found in the Eighth Circuit's Model Civil Jury Instruction 5.20.

6

field trip in September of 2018, testified at trial that Plaintiff never refused to cut 4A stands and never directed him not to cut 4A stands. (TT, Doc. 112, pp. 435–39.)

Plaintiff testified that two other rangers, both men, were the ones who refused to cut 4A stands with younger regeneration.[4] In fact, one of those male rangers, Mr. Kozel, testified that he did not cut the 4A stands with younger regeneration and that Mr. Van Every never raised his refusal to cut 4A stands as an issue. (TT, Doc. 114, pp. 863-64.) The male rangers were not disciplined and continued working as rangers, while Plaintiff was removed from her ranger position.

There also was evidence at trial of shifting explanations for Plaintiff's transfer. In October of 2018, Mr. Van Every informed Plaintiff and her co-workers that Plaintiff's transfer was not based on conduct or performance. In January of 2019, Mr. Van Every wrote a letter listing numerous issues that he said led to Plaintiff's reassignment. Plaintiff testified that Mr. Van Every's litany of complaints were never shared with her. Defendant's employee relations specialist, Julie Nelson, testified that Mr. Van Every first told her Plaintiff's reassignment was not based on her conduct or performance, then later told her that the action was based on performance issues. (TT, Doc. 114, pp. 780-81.) The jury saw numerous emails to and from Defendant's human relations specialists attempting to understand and explain the reasons for Mr. Van Every's reassignment decision. (Exhibits 54, 63, 65, 80, 94.) In addition, questions were raised about whether Defendant followed his own policies when transferring Plaintiff. Ms. Nelson testified that Plaintiff's reassignment was handled in a manner that differed significantly from any previous reassignment she had witnessed. (TT, Doc. 114, p. 814.)

Defendant presented evidence that Mr. Van Every was simply following directions given to him by Jeanne Weihrauch, one of several employee relations specialists involved in Plaintiff's transfer, when he wrote the reasons for Plaintiff's reassignment. The jury was allowed to decide who to believe and to draw its own conclusions about the trial testimony. The evidence left room for the jury to find Mr. Van Every's justifications for Plaintiff's transfer unworthy of credence, and to infer the real reason was Plaintiff's gender.

---

[4] There are four district rangers on the Black Hills National Forest. At the time of Plaintiff's reassignment, the district rangers were: Mystic District Ranger Ruth Esperance, Northern Hills District Ranger Steve Kozel, Bearlodge District Ranger Mike Gosse, and Hell Canyon District Ranger Tracy Anderson. (TT, Doc. 112, pp. 205, 211, 270; Doc. 114, pp. 845, 874).

Evidence that similarly situated employees outside the protected class were treated differently is a common way of showing pretext. *See Lewis v. Heartland Inns*, 591 F.3d at 1040–41. In that regard, evidence of Mr. Van Every's destruction of notes related to issues he had with Plaintiff's co-workers could have led the jury to infer that discrimination occurred. Prior to trial, at the summary judgment stage, Plaintiff requested an adverse jury instruction due to Mr. Van Every's destruction of notes related to employees other than Plaintiff. The Court denied the request at that time because there was no evidence the notes were destroyed in bad faith. *See, e.g., Davis v. White*, 858 F.3d 1155, 1160 (8th Cir. 2017) (requiring bad faith for adverse inference instruction for spoliation of evidence). The Court indicated that trial evidence might show otherwise. (Doc. 91, p. 9.)

At trial, Mr. Van Every referred to documents labeled "Issues with Ruth" and "Conversations with Ruth" which he said he wrote while working with Plaintiff to reflect issues and concerns he had with her. (TT, Doc. 115, p. 1094 and exhibit 241; p. 1111 and exhibit 222.) Mr. Van Every testified that he kept similar documentation about conversations and issues he had with other employees. According to Mr. Van Every, he destroyed all of the documentation related to other employees when he retired at the end of December of 2019 because those issues had been resolved, but he kept his notes related to Plaintiff because she had filed an EEO complaint. (TT, Doc. 115, pp. 1116-17.) The cross-examination of Mr. Van Every about his destruction of notes related to other employees demonstrated that Plaintiff was precluded from using the notes to compare Mr. Van Every's treatment of Plaintiff to his treatment of her (male) co-workers. (*Id.*, pp. 1140-1154.) Though the Court did not provide an adverse inference instruction, the jury heard that Mr. Van Every kept and destroyed notes related to issues he had with Plaintiff's co-workers.[5] The jury legitimately could have inferred that the destroyed notes would have revealed evidence of gender discrimination against Plaintiff.

Testimony from Jerome Krueger provided grounds for the jury to draw an adverse inference based on Mr. Van Every's destruction of notes. Mr. Krueger was the deputy forest supervisor at the Black Hills National Forest from December of 2014 through March of 2022. (TT,

---

[5] Plaintiff's proposed jury instructions included an adverse inference instruction. (Doc. 88, p. 34.) The Court did not include Plaintiff's proposed adverse inference instruction in its final set. Counsel for Plaintiff stated that he had no objections to the Court's final set of jury instructions. (TT, Doc. 115, p. 1254.)

Doc. 113, pp. 594-95.) He was the second in command under Mr. Van Every from August of 2016 through Mr. Van Every's retirement in December of 2019. (*Id.*, p. 595.) Mr. Krueger was asked about notes from a meeting he attended on August 16, 2018, with Mr. Van Every and Twila Morris, Mr. Van Every's executive assistant. (*Id.*, p. 652, exhibit 30.) Ms. Morris was the author of the notes. The notes from the meeting reflect a discussion between Mr. Van Every, Mr. Krueger, and Ms. Morris about problems with Steve Kozel, the male district ranger for the Northern Hills District. (*Id.*, pp. 654-55.). Mr. Krueger admitted that there were some concerns about Mr. Kozel's performance, including his refusal to deal with problem employees. (*Id.*, p. 655.) Mr. Krueger also testified that Mr. Van Every was an "avid note taker," and he presumed that Mr. Van Every would take notes on conversations he had with employees other than Plaintiff. (*Id.*, p. 642.) Mr. Krueger's testimony could have led the jury to infer Mr. Van Every's destroyed notes would have shown he treated males such as Mr. Kozel more favorably than Plaintiff.

Viewing the evidence and drawing all reasonable inferences in favor of Plaintiff, the jury could have doubted the reasons Mr. Van Every gave to justify Plaintiff's reassignment. Credibility is the province of the jury, and the jury was presented with sufficient evidence to reasonably conclude Defendant's justifications for Plaintiff's transfer were pretext and to infer discrimination was the real reason.

For all of these reasons, Defendant has failed to demonstrate that "the evidence . . . is so one-sided that one party must prevail as a matter of law." *Tatum v. City of Berkeley*, 408 F.3d 543, 549 (8th Cir. 2005). Therefore, the Court will not disturb the jury's liability determination, and Defendant's motion for judgment as a matter of law is denied.

## II. Motion for New Trial

### A. Standard of Review

In the alternative to judgment as a matter of law, Defendant requests a new trial pursuant to Rule 59. "Under Rule 59, the decision to grant a new trial lies within the sound discretion of the trial court." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011) (quoting *Howard v. Mo. Bone & Joint Ctr., Inc.*, 615 F.3d 991, 995 (8th Cir. 2010)). The standard for granting a motion for new trial is even higher than the standard for granting a motion for judgment as a matter of law. *See Michigan Millers Mut. Ins. Co., v. Asoyia, Inc.*, 793 F.3d 872, 878 (8th Cir. 2015). "A new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive damage award, or legal errors at trial, resulted in a miscarriage of justice." *Gray v.*

*Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). "With respect to legal errors, a 'miscarriage of justice' does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error." *Trickey v. Kaman Indus. Techs. Corp.*, 705 F.3d 788, 807 (8th Cir. 2013). A new trial is appropriate under Rule 59 only when "an evidentiary ruling was so prejudicial as to require a new trial which would be likely to produce a different result." *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1200 (8th Cir. 1990).

### B. Discussion

Defendant argues that a new trial is warranted because: 1) Defendant's human resource specialist, Jamie Barnes, testified that she observed "trends of discrimination against females within Region 2;" 2) Plaintiff and her lawyer referred to "other reassignments" after the Court had ruled on a motion in limine that reassignments by Mr. Ferebee were inadmissible;[6] and 3) Plaintiff's lawyer posed multiple objectionable questions to Shirlene Haas about alleged harassment by another manager. Defendant contends that the combination of this evidence left the jury "with the erroneous impression that Mr. Van Every was involved in the reassignment of other women and that he was part of a pattern of discrimination against women in Region 2." (Doc. 133, p. 16.) The Court cannot conclude that this evidence, alone or in combination, was so prejudicial that a new trial would likely produce a different outcome.

After Jamie Barnes testified that she observed trends of discrimination against females, Defendant's lawyer objected. (TT, Doc. 111, p. 132.) The Court sustained the objection, and a recess was taken to discuss what Ms. Barnes would be allowed to testify about. (*Id.*, pp. 132-38.) The Court ruled that Ms. Barnes's testimony would be limited to Ms. Barnes's "general views as a human relations person who's in Region 2." (*Id.*, p. 138.) She was not allowed to name anyone that Mr. Ferebee or anybody else in Denver may have discriminated against. (*Id.*, p. 137.) No prejudicial error occurred.

With regard to "other reassignments," the Court sustained Defendant's objections to questions referring to "other reassignments" in accordance with its ruling on a motion in limine filed prior to trial. The next morning, in a hearing outside the presence of the jury, counsel for

---

[6] Mr. Ferebee was Regional Forester for Region 2 and worked in the regional office located in Lakewood, Colorado. This Court's Order resolving motions in limine excluded evidence of other reassignments by Mr. Ferebee, and "warned that a trial will not be held regarding Brian Ferebee's actions." (Doc. 90.)

Defendant declined a mistrial but she requested a curative instruction. (TT, Doc. 112, pp. 177-180.) The Court gave the jury a limiting instruction proposed by Defendant's lawyer: "[Y]ou're to disregard references to other reassignments, as the Court has previously ruled that evidence related to those reassignments must be excluded as irrelevant to Ms. Esperance's claim." (*Id.*, p. 188.) The law presumes that jurors follow limiting instructions, and the Court assumes they did so here. *See generally Samia v. United States*, 599 U.S. 635 (2023) (applying assumption that jurors are able to follow the court's limiting instructions even when rights guaranteed by the Confrontation Clause are at issue). If any error occurred from references to "other reassignments," it was cured.

The Court sustained the objections to the questions posed to Shirlene Haas about alleged harassment. Defendant has not shown that a miscarriage of justice resulted from the questioning of Ms. Haas.

In summary, there is no showing that an evidentiary error occurred during the trial of this case that was so prejudicial it resulted in a miscarriage of justice, or that a new trial would likely produce a different result. Thus, the Court declines to grant a new trial.[7]

### III. Remittitur

#### A. Standard of Review

A remittitur is reserved for cases where the verdict is "plain injustice or a monstrous or shocking result." *Jenkins v. McLean Hotels, Inc.*, 859 F.2d 598, 600 (8th Cir. 1988) (internal quotation marks omitted). Whether a jury award is excessive lies within the discretion of the trial court. *Id.* (citation omitted). This is because "[t]he trial court had the benefit of hearing the testimony and observing the demeanor of witnesses." *Id.*

The Eighth Circuit has cautioned that "comparisons to other jury verdicts are often not particularly helpful in claims involving noneconomic damages, and that a district court may even abuse its discretion by relying on such comparisons where the facts . . . are not easily comparable to the facts of other cases.'" *Gonzalez v. United States*, 681 F.3d 949, 953 (8th Cir. 2012) (internal citation and quotations omitted).

---

[7] Defendant's argument that he is entitled to a new trial because the verdict is unsupported by the weight of the evidence is rejected because, as discussed above, there is sufficient evidence to support the jury's finding of discrimination.

11

### B. Discussion

The law provides that "the sum of the amount of compensatory damages awarded under [Title VII] for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses . . . shall not exceed . . . $300,000." 42 U.S.C. § 1981a(b)(3)(D). This congressional mandate requires the Court to remit Plaintiff's compensatory damages award to $300,000.[8] Defendant asks the Court to either vacate the award or further reduce the amount of compensatory damages. Plaintiff concedes the law imposes a cap on her damages, but argues she is entitled to $300,000.

At trial, Plaintiff testified about the emotional pain and mental anguish she experienced as a result of the alleged violation of Title VII. Plaintiff reported extreme depression, uncertainty, stomach problems, difficulty sleeping, waking up in the middle of the night, heart racing, anxiety, and teeth grinding. (TT, Doc. 112, pp. 327-28.) She described being "physically scared" to attend a performance evaluation and other types of meetings. (*Id.*, p. 328.) A plaintiff's own testimony can support an award of damages for emotional distress. *Kucia v. Southeast Arkansas Community Action Corp.*, 284 F.3d 944, 947 (8th Cir. 2002). "Medical or other expert evidence is not required to prove emotional distress." *Bailey v. Runyon*, 220 F.3d 879, 881 (8th Cir. 2000) (quoting *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th Cir. 1997)).

Defendant argues that Plaintiff's evidence of emotional distress was insufficient to support the jury's award. But Plaintiff's evidence of damages was not limited to her emotional distress or the attendant physical symptoms she suffered as a result. In fact, Plaintiff's evidence focused on damage to her reputation and her career. Plaintiff convincingly described the ranger position as the dream job she had worked toward all of her life. The evidence showed that Plaintiff was very diligent and passionate about her work, and there was substantial evidence that Plaintiff performed her work exceptionally well. Plaintiff and other witnesses testified that Mr. Van Every's decision to remove her from the ranger position was a death knell to her career as a ranger. When asked if her reputation had been affected by the reassignment, Plaintiff responded:

> Yeah. Without question. The agency's relatively small and connected. Yeah, if somebody knows something, and when you apply for especially a line officer job, they call around informally, and they find out you're labeled like that, and there's no chance. They won't even interview you. So – yeah, it's a death blow.

---

[8] This amount is exclusive of attorney fees. *See* 42 U.S.C. § 1981a.

(TT, Doc. 112, p. 322.) The next step in Plaintiff's career would have been a forest supervisor position like Mr. Van Every's. The week before her reassignment, Plaintiff had applied for a forest supervisor position in Montana. (*Id.*, p. 237.) After her reassignment, Plaintiff applied for several deputy and forest supervisor jobs. (*Id.*, p. 322.) With her impressive resume, Plaintiff expected to at least get an interview, but she did not. (*Id.*)

In addition, there was evidence of embarrassment and humiliation as a result of the Title VII violation. Plaintiff described thinking she was going to a meeting for her performance evaluation on October 26, 2018, and she was fully expecting the highest possible rating. Instead, Plaintiff unexpectedly was removed from her position and ushered out of the building - - she was not even allowed to collect all of her belongings. Julie Nelson, one of Defendant's human relations specialists, testified that she did not understand why Plaintiff was treated so harshly. (TT, Doc. 114, pp. 758-59, 766.) Ms. Nelson said usually such actions are used only if there is a serious safety concern. (*Id.*, p. 815.) Mr. Van Every said he followed the instructions he got from the Denver office of the Defendant "to the tee," including the ushering out. (TT, Doc. 115, p. 1119.)

Shortly after Plaintiff's reassignment, an article was published in the local newspaper announcing that Plaintiff was no longer the Mystic District ranger. (TT, Doc. 112, p. 323-26 and exhibit 194.) Mr. Van Every contributed a quote for the article, stating that the "leadership change" to Mr. Krueger was in the interest of the Forest and the Agency. (Exhibit 194.) Plaintiff had never seen an article like this about any of her colleagues. (TT, Doc. 112, p. 325.)

It is well-settled that "awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms." *Rowe v. Hussmann Corp.*, 381 F.3d 775, 783 (8th Cir. 2004) (citation omitted). Given the deferential standard that applies to the jury's award, and the evidence that was presented at trial, the Court cannot conclude that the jury's award is unjust, monstrous, or shocking. Thus, Plaintiff is entitled to an award of $300,000. Accordingly,

**IT IS ORDERED** that Defendant's motions for judgment as a matter of law and for new trial or remittitur are denied. (Doc. 122). The judgment will be amended to conform to the statutory cap of $300,000 for compensatory damages.

Dated this 3rd day of September, 2024.

BY THE COURT:

_____
Lawrence L. Piersol
United States District Judge