UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RUTH ESPERANCE,<br><br>Plaintiff,<br><br>vs.<br><br>THOMAS J. VILSACK, Secretary of Agriculture, U.S. Department of Agriculture,<br><br>Defendant. | 5:20-CV-5055-LLP<br><br><br>MEMORANDUM OPINION AND ORDER ON MOTION FOR ATTORNEY FEES |

Plaintiff, Ruth Esperance ("Plaintiff" or "Esperance"), filed a petition for attorney fees on October 24, 2023. (Doc. 124.) On August 30, 2024, Plaintiff filed a supplemental petition for attorney fees. (Doc. 135.) Plaintiff seeks a total of $494,491.32 in attorney fees, costs, and expenses, including sales tax, for all legal work done on this case. (*Id.*) Defendant, Thomas J. Vilsack, the Secretary of the U.S. Department of Agriculture,[1] objects to out-of-state counsel's hourly rates, to some of the hours billed, and to certain expenses. In addition, Defendant argues that special circumstances exist for denying an award of attorney fees in this case. For the following reasons the Court will award Plaintiff attorney fees, sales tax, and expenses in the amount of $393,188.36.

## BACKGROUND

On October 26, 2018, Plaintiff's supervisor, Mr. Van Every, removed her from her position as the ranger for the Mystic District in the Black Hills National Forest. On December 22, 2018, Plaintiff, through her lead attorney, Daniel Gebhardt, filed a formal Equal Employment Opportunity (EEO) complaint with her federal agency. Following an EEO investigation in 2019, a Report of Investigation was issued in July 2019. Initially, Plaintiff elected to proceed to a hearing with the EEOC, but later withdrew her EEOC hearing request in order to pursue her case in federal

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), a public officer's successor is automatically substituted as a party. Thomas J. Vilsack became the Secretary of Agriculture on February 23, 2021.

court. On June 4, 2020, Defendant issued its Final Agency Decision. On September 2, 2020, Plaintiff timely filed a Complaint in this Court alleging claims of sex discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. (Doc. 1.) Plaintiff claimed that she was wrongfully removed from her supervisory position as a District Ranger with the USDA's Forest Service on account of her gender, and that she was subject to a hostile work environment.

Summary judgment was granted in Defendant's favor on the hostile work environment claim. (Doc. 91.) A jury trial was held on the sex discrimination claim beginning on September 18, 2023, and ending on September 23, 2023. The jury returned a unanimous verdict finding Defendant liable for discrimination on the basis of Plaintiff's gender and awarding Plaintiff $400,000 in compensatory damages. (Doc. 105.) On September 26, 2023, in accordance with the jury's verdict, the Court entered judgment in favor of Plaintiff and against Defendant in the amount of $400,000. (Doc. 110.)

On October 20, 2023, Defendant filed a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or in the alternative for a new trial or remittitur under Federal Rule of Civil Procedure 59, and to amend the judgment to conform to the statutory cap of $300,00 for compensatory damages pursuant to 42 U.S.C. § 1981a. (Doc. 122.) The Court denied Defendant's post-trial motions for judgment as a matter of law and new trial, but granted the motions to remit and to conform the judgment to the statutory cap. (Doc. 137.) An Amended Judgment for Plaintiff in the amount of $300,000 was issued on September 3, 2024. (Doc. 138.) The question now before the Court is whether Plaintiff is entitled to an award of attorney fees and, if so, the amount of fees to award.

## DISCUSSION

Under Title VII, the Court is authorized, in its discretion, to award "the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k).[2] Defendant does not dispute that Plaintiff is a prevailing party who usually would be entitled to an award of attorney fees under Title VII, but Defendant argues that special circumstances exist to deny an award in this case. Specifically, Defendant accuses Plaintiff's lawyer, Mr. Gebhardt, of

---

[2] The standards for determining reasonable attorney fees in a Title VII action are the same as those used to determine fee awards under 42 U.S.C. § 1988. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 n.7 (1983).

intentionally violating the Court's pretrial order precluding references to other reassignments by Brian Ferebee. For the following reasons, the Court will not deny attorney fees in this case.

Prior to trial, the Court granted Defendant's motion in limine to preclude from trial any references to reassignments by Mr. Ferebee, the Regional Forester for Region 2 who worked in Lakewood, Colorado at the time Plaintiff was removed from her Ranger position. (Doc. 90.) On the first day of trial, Plaintiff called Jamie Barnes as a witness. Ms. Barnes was a lead HR specialist with Defendant at the time of Plaintiff's reassignment. (Doc. 111, pp. 90-91.) Mr. Gebhardt asked Ms. Barnes if she observed any gender discrimination at the Forest Service. (*Id.*, p. 131.) Defendant's lawyer objected, referencing the motion in limine. (*Id.*) Mr. Gebhardt attempted to narrow the question by indicating that the witness should not talk about "other reassignments." (*Id.*) After further objection by Defendant, the Court held a hearing outside the presence of the jury. Mr. Gebhardt explained that he was trying to prevent the witness from referencing other reassignments that were excluded by the Court. (*Id.*, pp. 134-135.) After some discussion about the type of question Mr. Gebhardt could ask Ms. Barnes, the Court stated "I think that it's clear we're not going to specific instances in Colorado. This witness can testify as to her general views as a human relations person who's in Region 2." (*Id.*, p. 138.) The Court explained to Ms. Barnes that "anything Mr. Ferebee did or didn't do" could not be part of her opinion "because we're not going to litigate those one way or the other." (*Id.*, p. 136.) Ms. Barnes stated that she understood. (*Id.*) After the jury returned to the courtroom, Mr. Gebhardt asked Ms. Barnes not to go into "specific instances," "but what is your general impression of gender discrimination by male managers in Region 2 of the Forest Service?" (*Id.*, pp. 138-139.) Ms. Barnes responded, " I did, in the three years that I worked there, see trends of discrimination against females within Region 2." (*Id.*, p. 139.)

At the end of the first day of trial, outside the presence of the jury, counsel for Defendant argued that Mr. Gebhardt's remarks about setting aside other reassignments violated the spirit of the Court's ruling on the motion in limine. Mr. Gebhardt responded that it is hard to ask a question in the face of a motion in limine because "you have to say don't talk about this." (*Id.*, pp. 157-158.) The Court agreed with Mr. Gebhardt that it is difficult to ask questions in a way that avoids a violation of a court-ordered exclusion of certain evidence. (*Id.*, p. 158.) Counsel for Defendant also argued that Mr. Gebhardt's question to Ms. Barnes regarding her impression of gender discrimination in Region 2 violated the spirit of the Court's ruling on the motion in limine. (*Id.*,

p. 157.) Mr. Gebhardt noted that he tried to pose the question to Ms. Barnes "word for word" as directed by the Court. (*Id.*, p. 158.) The Court agreed that Mr. Gebhardt asked the question of Ms. Barnes as directed by the Court. (*Id.*)

The next morning, counsel for Defendant argued that Mr. Gebhardt's questions to Ms. Barnes were prejudicial, and counsel requested a limiting instruction to the jury to disregard Mr. Gebhardt's references to other reassignments. (Doc. 112, p. 178.) After hearing argument from the parties, the Court again concluded that it is not easy to carve out the reassignments by Mr. Ferebee. (*Id.*, p. 179-180.) After confirming that Defendant was not seeking a mistrial, the Court agreed to Defendant's request for a limiting instruction. (*Id.*, pp. 179-180.) The Court gave the following limiting instruction to the jury as soon as they were seated in the courtroom: "You're to disregard references to other reassignments, as the Court has previously ruled that evidence related to those reassignments must be excluded as irrelevant to Ms. Esperance's claim." (*Id.*, p. 188.) The trial continued.

In its post-trial motions, Defendant asserted that the Court clearly erred by allowing Ms. Barnes to testify that she saw a trend of gender discrimination in Region 2. According to Defendant, Ms. Barnes' testimony, combined with Mr. Gebhardt's references to "other reassignments," caused prejudicial error by leaving the jury with "the erroneous impression that Mr. Van Every was involved in the reassignment of other women and that he was part of a pattern of discrimination against women in Region 2." (Doc. 123, p. 23.) The Court ruled that no evidentiary error occurred during the trial that was so prejudicial that it resulted in a miscarriage of justice, and that if any error occurred from references to "other reassignments," it was cured with the limiting instruction given to the jury. (Doc. 137, p. 11.)

Now, in opposing Plaintiff's motion for attorney fees, Defendant argues that Mr. Gebhardt's references to "other reassignments" amounted to unprofessional conduct in violation of the Court's order on the motion in limine, and that the Court should use its discretion to deny attorney fees based on Mr. Gebhardt's misconduct. In support of this argument, Defendant submitted a Declaration of Jamie Barnes wherein she states that during a one-hour telephone conference with Mr. Gebhart the night before her testimony, Mr. Gebhardt told her she could "tip toe into that area" (other reassignments by Brian Ferebee), and that the Court's ruling on the motion in limine did not mean she couldn't mention "other things" regarding Mr. Ferebee. (Doc. 127.) Mr. Gebhardt disagrees with this characterization of his interaction with Ms. Barnes. In his

4

own responsive declaration, Mr. Gebhardt states it is his recollection that he "informed Ms. Barnes of the ruling regarding other reassignments and explained the ruling accurately." (Doc. 132-1 at ¶ 14.)

The Court concludes that Mr. Gebhardt's examination of witnesses during the trial is not the type of conduct that courts have found should preclude an award of attorney fees. During the trial, the Court did not view Mr. Gebhardt's questions as a violation of the motion in limine. The Declaration of Jamie Barnes does not convince the Court otherwise. Accordingly, the Court will grant an award of attorney fees to Plaintiff in this case.

The starting point in determining reasonable attorney fees is the lodestar calculation: the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). There is a strong presumption that the lodestar calculation represents a reasonable fee award. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). After calculating the lodestar, courts may consider the twelve factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[3] However, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

The party seeking attorney fees has the burden to prove that its request for attorney fees is reasonable. *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (citing *Hensley*, 461 U.S. at 437). To meet its burden, the fee petitioner must "submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433.

The court has "broad discretion" in considering the amount of the fees. *Wescott Agri-Prods., Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012). A district court should use its own knowledge, experience, and expertise in determining the fee to be awarded. *See Gilbert v. City of Little Rock, Ark.*, 867 F.2d 1063, 1066 (8th Cir. 1989). An important factor

---

[3] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Hensley*, 461 U.S. at 430 n.3 (citing *Johnson*, 488 F.2d at 717–19).

to consider when evaluating attorney fees is the degree of success the claimant obtained. *Hensley*, 461 U.S. at 436, 440 ("We hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988."). Plaintiff achieved a high level of success in the present case.

Three declarations of Mr. Gebhardt, Plaintiff's lead attorney from the Solomon Law Firm, were submitted in support of Plaintiff's petition and supplemental petition for attorney fees. (Docs. 125-1, 132-1, and 136.) Attachments to Mr. Gebhardt's declarations include copies of three retainer agreements signed by Plaintiff, the 2023 Fitzpatrick Matrix, all relevant billing records, and information about the South Dakota lawyers whose hourly fee Defendant urges this Court to apply. Declarations of Plaintiff's other lawyers at the Solomon Law Firm, Ariel Solomon, Eve Pachter, and Nicole Finn, also were filed, along with a declaration of paralegal, Gina Sitcer. Plaintiff was represented by local counsel with the Goodsell Oviatt Law Firm in Rapid City, South Dakota. Declarations of partners Nathan Oviatt and G. Verne Goodsell were included in support of Plaintiff's fee request. Plaintiff's own declaration also was filed.

Mr. Gebhardt obtained his law degree from the University of Texas and his LL.M from the University of Melbourne Law School in 2001. He was admitted to the Bar in New Jersey in 2005. Mr. Gebhardt has approximately 20 years of extensive experience representing federal employees in employment discrimination cases against the federal government, including class actions and multiparty cases. Mr. Gebhardt has represented federal employees in cases before the EEOC, the Merit Systems Protection Board, U.S. District Courts in Washington, D.C., Maryland, and Virginia, and the U.S Court of Appeals for the Federal, D.C. and Fourth Circuits. He is a partner of the Solomon Law Firm, PLLC. Currently, Mr. Gebhardt's customary hourly rate for federal sector employment litigation is $742. The Fitzpatrick Matrix hourly rate requested for Mr. Gebhardt in this case ranges from $545 to $717 for work performed from 2018 to the present.

Ariel Solomon, Mr. Gebhardt's partner and the principal of Solomon Law Firm, graduated from Albany Law School in 2006. Ms. Solomon attests that she has represented hundreds of federal employees, and her law firm is "one of a dozen or so law firms" in the nation that focus on representing federal employees in discrimination cases. (Doc. 125-2 at ¶12.) Ms. Solomon's writing on federal employment matters has been published in multiple journals. Her customary hourly rate is currently up to $742. Plaintiff requests hourly rates for Ms. Solomon based on the Fitzpatrick Matrix of $615 for work performed in 2021, and $697 or work performed in 2023.

According to Ms. Solomon, after evaluating Plaintiff's case, the firm decided to represent Plaintiff at the administrative level, and then later to represent her in the U.S. District Court in South Dakota, "despite the enhanced cost for both the law firm and the client," and with the understanding that they would only recover all attorney fees and costs if they were successful. (*Id.* at ¶ 5.) Ms. Solomon reviewed all of the billing records submitted with the original petition for attorney fees, and she attests to the necessity and reasonableness of the hours billed.

Associate, Eve Pachter, has successfully litigated numerous employment law cases since she graduated from the University of Maryland Law School in 2012. Prior to joining Solomon Law Firm, Ms. Pachter worked as Senior Counsel at the New York City Law Department where she defended the City of New York and municipal agencies in a variety of complex legal matters. Her current rate for legal services is $658 per hour. Plaintiff seeks recompense for the work performed by Ms. Pachter in 2023 at the Fitzpatrick rate of $612 per hour.

Former associate, Nicole Finn, a 2020 graduate of Albany Law School, also has federal employment law experience. She has represented federal employees before the Merit Systems Protection Board, the EEOC, and the U.S. District Courts in the State of New York. Ms. Finn worked on Plaintiff's case from 2020 to 2022. Her hourly rate is up to $658, but Plaintiff is requesting Fitzpatrick hourly rates of $423 for work performed by Ms. Finn in 2020, and $473 for Ms. Finn's work in 2022.

Gina Sitcer, a college graduate and a paralegal since 2000, began working for Solomon Law Firm in 2012, and she became the Law Firm Administrator in 2022. Ms. Sitcer attests that Solomon Law Firm is one of a handful of law firms in the country that focuses on representing federal employees. She assisted Mr. Gebhardt with important aspects of Plaintiff's case before the EEOC and this Court. Plaintiff seeks Ms. Sitcer's customary hourly rate of $202, as delineated in the retainer agreements signed by Plaintiff. This rate is less than the Fitzpatrick rate for Ms. Sitcer's work.

In the initial petition for attorney fees, Plaintiff seeks $399,918.45 in attorney fees, $25,338.10 in sales tax, and costs and expenses of $12,224.99, for a total of $437,481.54. This includes all time expended litigating the underlying case, and for drafting the initial petition for attorney fees. In the supplemental petition for attorney fees, Plaintiff seeks an additional $50,881.35 in attorney fees, $3,228.61 in sales tax, and $2,899.82 in costs and expenses for responding to Defendant's post-trial motions and for preparing the reply in support of Plaintiff's

petition for attorney fees, for a total of $57,009.78. The total award requested in the initial and the supplemental petitions for attorney fees equals $494,491.32. Plaintiff also requests interest from the date she filed the first petition for attorney fees, continuing until the fees are paid.

Defendant argues that the attorney fees requested by Plaintiff for out-of-state counsel's work should be reduced because some of the hours were not reasonably expended, the hourly rates are excessive, and Plaintiff did not obtain full relief on her claims. Defendant does not contest the attorney fees or expenses requested for Plaintiff's local counsel. (Doc. 126, p. 17; Doc. 140, p. 4.) Thus, the following discussion of reasonable hourly rates and reasonable hours expended is limited to Plaintiff's out-of-state counsel.

### A. Reasonable Hourly Rates

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, the ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (citation and quotation omitted). The Eighth Circuit has stated that "[t]he relevant market for attorneys ... may extend beyond the local geographic community," and "[a] national market or a market for a particular legal specialization may provide the appropriate market." *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993). In addition, if a plaintiff can show she made diligent, good faith efforts but was unable to retain local counsel, hourly rates "are not limited to the prevailing rate in the district where the case is tried." *Avalon Cinema Corp. v Thompson*, 689 F.2d 137, 140 (8th Cir. 1982). In setting the reasonable hourly rate, a court should consider the skill and experience of the lawyers. *See Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) ("In determining whether a fee is reasonable, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates.") (citation and internal quotation omitted). "[C]ourts may draw on their own experience and knowledge of prevailing market rates." *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2005).

Plaintiff argues that Mr. Gebhardt, Ms. Solomon, and the Solomon Law Firm have represented thousands of federal employees, including in discrimination cases against federal agencies, and thus they have a specialty in federal sector employment law that no South Dakota lawyers have. Plaintiff asserts that she was unable to retain local counsel with comparable expertise in federal employment law. According to her declaration, Plaintiff "did internet searches and contacted a couple of local South Dakota law firms to discuss potential representation, but they were not versed at all in federal employment law." (Doc. 125-7, ¶ 2.) Plaintiff broadened

8

her search beyond South Dakota and found the attorneys at the Solomon Law Firm in Washington, D.C. who specialize in federal employment law and could answer her questions.[4] (*Id.* at ¶ 3.)

For out-of-state counsel, Plaintiff requests hourly rates based on the Fitzpatrick Matrix, a copy of which is attached as Exhibit B to Mr. Gebhart's declaration. (Doc. 125-1, p. 42.) The Fitzpatrick Matrix offers a "measure of the prevailing market rate for complex federal litigation in the [D.C.] District." *J.T. v. District of Columbia*, 652 F. Supp. 3d 11, 32 (D.D.C. 2023). In determining appropriate hourly rates, courts in D.C. have often used a schedule of hourly fees based on years of attorney experience, the first of which was developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984). *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 142 F. Supp. 3d 1, 16 (D.D.C. 2015). In *J.T.*, Chief Judge Howell of the D.C. District Court explained that the Fitzpatrick Matrix is a spin-off of the Laffey Matrix. After detailing the methodology and development of the Fitzpatrick Matrix, Judge Howell rejected the Laffey Matrix in favor of the Fitzpatrick Matrix. *See J.T.*, 652 F. Supp. 3d at 33. ("The exact data points from which [the creator of the Laffey Matrix] derived his rates seem lost to history, if they were ever made available at all.").

As fee "matrices are somewhat crude, the matrix's proponent usually" should point to additional evidence of the prevailing market rate, which can include "affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases [or] evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *DL v. District of Columbia*, 924 F.3d 585, 589 (D.C. Cir. 2019) (internal quotation marks omitted). In this case, Plaintiff's lawyers and her paralegal set forth their current customary hourly rates for federal sector employment litigation in their declarations: $742 for attorneys Gebhardt and Solomon, $658 for attorneys Pachter and Finn, and $202 for paralegal Sitcer. In addition, copies of three retainer agreements signed by Plaintiff in 2018, 2019 and 2020, show that Plaintiff agreed to the Solomon Law Firm's customary hourly

---

[4] In his declaration, Mr. Gebhardt explains that this case was led by him in the firm's Washington, D.C. office, and attorneys Solomon, Patcher, and Finn supported him remotely from the law firm's office in New York State. (Doc. 125-1, p. 5, ¶ 22.)

9

rates. (Doc. 125-1, pp. 9-40.) The Court was not able to locate any evidence of hourly rates or attorney fees actually paid by Plaintiff.

As mentioned above, Plaintiff does not request customary hourly rates for out-of-state counsel. Rather, Plaintiff requests hourly rates based on the Fitzpatrick Matrix. In his declaration, Mr. Gebhardt delineates the hourly rates requested based on the Fitzpatrick Matrix: $545.00 - $717.00 for work performed by attorney Gebhardt from 2018 to present, $615 for work performed by attorney Solomon in 2021 and $697 for work performed by her in 2023, $612 for attorney Pachter's work in 2023, $423 for attorney Finn in 2020 and $473 in 2022, and $202 for paralegal Gina Sitcer. (Doc. 125-1, p. 5, ¶ 22.) Mr. Gebhardt points out that the Fitzpatrick Matrix rates requested are lower than the lawyers' customary rates and the rates permitted in the retainer agreements signed by Plaintiff. (*Id.*)

Defendant urges the Court to apply lower local South Dakota hourly rates for Plaintiff's out-of-state counsel. Defendant argues that this is a garden-variety employment discrimination case which did not require special expertise, and that Plaintiff has failed to demonstrate a good faith effort to retain a South Dakota lawyer simply by contacting "a couple" of local law firms. Defendant filed declarations of two South Dakota lawyers, Sara Frankenstein and Phillip Stiles, who state that they performed a conflict check and would have been able and willing to represent Plaintiff. (Doc. 128, Frankenstein Decl. at ¶ 5; Doc. 129, Stiles Decl. at ¶ 7.) Defendant asserts that the prevailing market rate for experienced attorneys litigating employment discrimination cases in the District of South Dakota is between $315 to $400 per hour. *See* Frankenstein Decl. ¶ 5 ($315 per hour for employment discrimination matters); Stiles Decl. ¶ 5 ($360 per hour for employment discrimination matters); Docket 125-6, Nathan Oviatt Decl. ¶¶ 9-10 (partner rate of $300 to $400 per hour).

Defendant admits that at least one lawyer who practices in South Dakota has an hourly rate of $400 to $500 for employment discrimination cases. Defendant cited to a declaration of Stephanie Pochop indicating that, in August of 2023, her billing rate for employment discrimination cases was $400/hour for cases where the EEOC issued a right to sue notice without an in-depth investigation, and $500/hour in cases that were fully investigated by the EEOC.[5] Ms.

---

[5] The declaration of Ms. Pochop cited by Defendant was filed in *Curran v. Haaland*, 20-cv-5009-LLP (D.S.D.). *Curran* is an employment discrimination case against a federal agency that was litigated before this Court. After the *Curran* case settled, this Court ruled on the plaintiff's motion

Pochop attested to having more than 25 years of litigation experience, much of it involving Title VII, ADA or ADEA discrimination cases.

Defendant asks the Court to compensate Daniel Gebhardt and Ariel Solomon at the rate of $360/hour; associate attorneys Nicole Finn and Eve Pachter at the rate of $250/hour, and paralegal Gina Sitcer at the rate of $125/hour. (Doc. 126, p. 14.)

In response to Defendant's arguments in favor of a lower hourly rate, Plaintiff submitted a declaration of Mr. Gebhardt that includes a list of 64 cases in which he represented federal employees in employment discrimination cases against the federal government. (Doc. 132-1, Gebhardt Decl. ¶ 5.) Mr. Gebhardt's declaration also includes some information he discovered about attorneys Frankenstein and Stiles. A copy of Ms. Frankenstein's AVVO profile indicates that only 10 percent of her practice is employment law, while Mr. Gebhardt spends 100 percent of his time on employment law. (Doc. 132-1, ¶ 8 and Exhibit B.) Mr. Gebhardt also found an affidavit of Ms. Frankenstein that was filed in a case before Judge Charles Kornmann, where Ms. Frankenstein explains her expertise in the area of election law. (Doc. 132-1, ¶ 9 and Exhibit C.) Mr. Gebhardt said that his review of attorney Stiles' on-line profile "does not reflect that this attorney has much, if any, employment law experience." (Doc. 132-1, ¶ 10 and Exhibit E.) Plaintiff argues that, with no apparent experience suing the federal government for employment discrimination, there would be no reason for Plaintiff to have contacted attorneys Frankenstein or Stiles.

Plaintiff also submitted the Declaration of G. Verne Goodsell, a partner at the Goodsell Oviatt law firm which served as Plaintiff's local counsel. (Doc. 132-2.) Mr. Goodsell stated, "While there are local attorneys who handle employment discrimination, civil rights and Title VII cases, none of them, to my knowledge, have the vast multijurisdictional experience as lead counsel in this case." (*Id.* at ¶ 6.)

In summary, Plaintiff argues that it was reasonable for her to hire Mr. Gebhardt and the Solomon Law Firm because federal employee lawsuits against federal government agencies involve particular legal issues and procedures at the administrative level that the Solomon lawyers are intimately familiar with, and because no South Dakota lawyers have comparable experience in federal sector employment law. Her internet searches and telephone calls did not lead her to any

---

for attorney fees. Defendant in *Curran* filed attorney Pochop's declaration to support the hourly rate it deemed reasonable for the plaintiff's out-of-state counsel in that case.

South Dakota lawyers that were well-versed in federal employment law. Plaintiff found the Solomon Law Firm when she broadened her search beyond South Dakota.

Plaintiff's decision to hire Mr. Gebhardt to represent her in the administrative proceedings against the agency was not unreasonable, and it made sense for Mr. Gebhardt to continue representing Plaintiff in this federal court action. However, that does not mean hourly rates reflected in the Fitzpatrick Matrix are reasonable rates for Plaintiff's lawyers for a case filed in the District of South Dakota. Other courts in the Eighth Circuit have declined to use the Laffey Matrix in determining a reasonable hourly fee.[6] *See, e.g., Livers v. Kofoed*, 2014 WL 1309616, at *6 (D. Neb. Mar. 31, 2014) ("The rates reflected in the Laffey Matrix may be appropriate for larger cities, but they are not reflective of rates in Omaha, Nebraska."); *Owner-Operator Indep. Driver Ass'n, Inc. v. Dunaski*, 2012 WL 4009333, at *4 (D. Minn. Sept. 12, 2012) (citations omitted) ("[S]imply because the Laffey Matrix is used by the United States Attorney's Office in Washington, D.C. does not mean that its rates are reasonable in the Twin Cities area."); *H.P. v. Knickrehm*, 2005 WL 2261172, at *3 (E.D. Ark. Sept. 16, 2005) (declining to apply the Laffey matrix rate and applying a rate "more reflective of the ordinary rate for similar work in the Little Rock community..."). *See also Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010) ("[J]ust because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away.")

After considering the entire record, the Court concludes that the Fitzpatrick Matrix rates are not justified, but Plaintiff has justified hourly rates for Mr. Gebhardt that exceed South Dakota market rates. The record reflects that Mr. Gebhardt has more experience in federal employment law than the two South Dakota lawyers identified by Defendant, particularly representing federal employees against federal agencies. Plaintiff clearly benefitted from Mr. Gebhardt's knowledge and experience throughout this litigation.

A higher hourly rate for Mr. Gebhardt is especially justified for his trial work, where he and Plaintiff obtained an excellent result. Defendant was represented at trial by two experienced lawyers who split the trial duties, while Mr. Gebhardt handled the trial mostly on his own, without the presence of his paralegal to assist him. Though he had some assistance from local counsel, Mr. Gebhardt had sole responsibility for opening statement, direct and cross-examination of witnesses, entering exhibits into evidence, closing argument, settling jury instructions, and

---

[6] As explained above, the Laffey Matrix is the precursor to the Fitzpatrick Matrix.

addressing most of the legal issues that arose during the trial. Mr. Gebhardt's skill and experience, and the excellent result he obtained at trial, should be reflected in the hourly rates.

The following hourly rates are reasonable under the circumstances in this particular case: $600 for attorney Gebhardt; $500 for attorney Solomon; $400 for attorney Pachter; $300 for attorney Finn; and $200 for paralegal Sitcer.

## B. Reasonable Hours Expended

In the initial petition for attorney fees, Plaintiff requests payment for the following hours for litigating the underlying case and for preparing the initial petition for attorney fees:

| | |
|---|---|
| Gebhardt | 479.2 |
| Solomon | 14.9 |
| Pachter | 12.6 |
| Finn | 41.6 |
| Sitcer | 25.4 |
| TOTAL HOURS | 573.7 |

(Doc. 125, p. 18.) In the supplemental petition for attorney fees, Plaintiff requests payment for 65.8 hours that Mr. Gebhardt spent working on post-trial motions. (Doc. 136, ¶ 4 and Exhibit A.) Defendant does not object to the 65.8 hours documented in the supplemental petition. Plaintiff has two main objections to the hours listed in the initial attorney fee petition.

First, Defendant objects to awarding fees for time spent on the hostile work environment claim. Defendant argues that Plaintiff's fee award should be reduced based on her partial success because the Court granted summary judgment to Defendant on the hostile work environment claim. Defendant suggests deducting 50% of the hours worked on the complaint and the responses to the motion to dismiss and motion for summary judgment, for a total deduction of 57.1 hours. In response, Plaintiff argues that she is entitled to recover fees for work on the hostile work environment claim because it arose from the same facts as her sex discrimination claim and it cannot be viewed as an unrelated claim. She contends that the evidence obtained through work on the hostile work environment claim contributed significantly to her success on the sex discrimination claim.

"Where a plaintiff has obtained excellent results, his [or her] attorney should receive a fully compensatory fee.... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435.

13

Furthermore, if a party prevails overall, "the court should not simply deny fees for particular matters on which the plaintiff did not prevail." *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001) (citing *Jenkins by Jenkins v. State of Mo.*, 127 F.3d 709, 714 (8th Cir. 1997)). This is because when several claims arise from a common core of facts, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Hensley,* 461 U.S. at 435.

Though Plaintiff did not prevail on the hostile work environment claim on summary judgment, the work done on the hostile work environment claim contributed to Plaintiff's success at trial because the facts and legal issues involved in establishing both of Plaintiff's claims were interrelated. Plaintiff achieved an excellent result by prevailing on the sex discrimination claim at trial and obtaining a $400,000 verdict from the jury. The attorney fee award will not be reduced.

Second, Defendant argues that 79.7 hours preparing the initial attorney fee petition is unreasonable. Defendant asks the Court to deduct 39.7 hours and award only 40 hours of compensation for work on the initial fee petition. In response, Plaintiff argues that it was reasonable to spend 79.7 hours gathering all of the information necessary to prepare the petition for attorney fees in this case, with the contentious litigation spanning over five years.

Time reasonably spent bringing a fee application generally is compensable where attorney fees are authorized by statute, as long as it is not excessive. *See Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1314 (8th Cir. 1981). The Court finds that 79.7 hours to prepare the fee petition is excessive. In the exercise of its discretion, the Court will award 40 hours for this work.

As to the remaining hours billed by Plaintiff's lawyers in this case, Mr. Gebhardt attests that they "litigated this case in an efficient manner, e.g., taking only three depositions, abstaining from hiring experts, and having lead attorney Mr. Gebhardt litigate the case at trial without having other attorneys from the Solomon Law Firm travel to South Dakota to participate in the trial." (Doc. 125-1, ¶ 12.) The Court's review of the time entries confirms that Plaintiff's lawyers handled the underlying case efficiently, and the billing records do not include any unnecessary, excessive or duplicative time.

Accordingly, Plaintiff will be awarded fees for 534 hours spent by out-of-state counsel litigating the underlying case and preparing the initial attorney fee petition, and 65.8 hours

14

expended by Mr. Gebhardt on Defendant's post-trial motions and the reply brief in support of the motion for attorney fees.

### C. Lodestar for Out-of-State Counsel

The lodestar for the underlying litigation and the initial petition for attorney fees is:

| | | |
|---|---|---|
| Gebhart | 439.5 hours at $600 equals | $263,700.00 |
| Solomon | 14.9 hours at $500 equals | $7,450.00 |
| Pachter | 12.6 hours at $400 equals | $5,040.00 |
| Finn | 41.6 hours at $300 equals | $12,480.00 |
| Sitcer | 25.4 hours at $200 equals | $5,080.00 |
| TOTAL HOURS | 534     TOTAL FEES | $293,750.00 |

The lodestar for work on Defendant's post-trial motions and the reply brief in support of the motion for attorney fees is:

| | | |
|---|---|---|
| Gebhardt | 65.8 hours at $600 equals | $39,480.00 |

Based on the lodestar, the total fee award for work performed by Plaintiff's out-of-state counsel is $333,230.00.

### D. Attorney Fees for Local Counsel

Defendant does not contest the hourly rates or time expended by local counsel. Fees of $28,011.25 are requested in the initial petition for attorney fees, and $3,702.75 in the supplemental petition. After careful review of the records, the Court awards Plaintiff $31,714.00 for local counsel's attorney fees.

### E. Sales Tax

SDCL §§ 10-45-4 and 10-45-4.1 require lawyers to charge sales tax. Plaintiff requests sales tax for her attorney fees. Sales tax is 6.2% (4.2% South Dakota state sales tax and 2% municipal sales tax). The total attorney fee award in this case is $364,944.00 ($333,230.00 for out-of-state counsel plus $31,714.00 for local counsel). Sales tax totaling $22,626.53 ($364,944.00 x 6.2%) is assessed against Defendant. *See Johnson v. Astrue*, No. CIV 10-4052-RAL, 2011 WL 4458850, at *11 n.5 (D.S.D. Sept. 23, 2011) ("the general practice of the District of South Dakota is to award taxes on attorney's fees as part of those fees"). Attorney fees of $364,944.00 plus sales tax of $22,626.53 brings the total award of attorney fees in this case to $387,570.53.

## F. Costs and Expenses

Title VII allows a prevailing plaintiff to recover costs. *See* 42 U.S.C. § 2000e-5(k). A fee-shifting statute such as this allows the court to award "litigation expenses" that may not otherwise be claimed under the category of attorney fees. Such expenses have been described by the Eighth Circuit as "out-of-pocket expenses of the kind normally charged to clients by attorneys." *Pinkham v. Camex, Inc.*, 84 F.3d 292, 295 (8th Cir. 1996) (reasonable out-of-pocket litigation expenses, such as charges for long-distance and fax, messenger, and express mail services were reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys, and thus should have been included as part of attorney fee award to prevailing party in copyright case); *Grand Electric, LLC v. Int'l Brotherhood of Elec. Workers Local 265*, 2011 WL 6740408, at *12 (D.Neb. Dec. 22, 2011) (including litigation costs and expenses in award of attorney fees in ERISA case).

In the initial petition for attorney fees, Plaintiff requested total costs and expenses for out-of-state counsel in the amount of $11,054.09. In the supplemental petition for attorney fees, Plaintiff explained that a mistake was discovered, and the total amount was reduced to $10,901.94. In the supplemental petition for attorney fees, Plaintiff seeks recovery of an additional $2,680.24 for out-of-state counsel costs, mostly for witness fees and the cost of the trial transcript. However, those same costs were included in Plaintiff's Bill of Costs, and the Clerk of Court taxed the costs that were allowable. (Doc. 141, Taxation of Costs.) Thus, the Court will not award any additional amount for out-of-state counsel's costs included in the supplemental petition, and this discussion is limited to the costs of $10,901.94 requested for out-of-state counsel in the initial petition.

Defendant objected to six expenses claimed by out-of-state counsel: 1) $105.44 for a PDF conversion program; 2) $212.30 for a Dropbox subscription; 3) $72.00 for a subscription to convert emails to PDF; 4) $300 for Litigation Support Services; 5) $866.86 for an invoice from The Little Print Shop for copies of trial exhibits; and 6) meals for Ms. Esperance.

In response to Defendant's objections, Plaintiff explained that the first three expenses listed were "integral to the ligation" and eliminated the need for a lawyer to do the necessary work. (Doc. 132, pp. 13-14.) Plaintiff also explained that the $300.00 charge for Litigation Support Services involved technical assistance during the depositions of Mr. Ferebee, Mr. Van Every, and Mr. Krueger, which allowed Plaintiff to complete the depositions. Defendant's objections to the first four listed expenses are denied.

Plaintiff included The Little Print Shop invoice in the amount of $866.86 in its Bill of Costs. The Clerk of Court explained why only $88.80 was taxed for those copies. (Doc. 141.) For the same reasons explained by the Clerk, the Court will not award the remaining amount of $778.06.

Finally, Defendant objects to paying for Ms. Esperance's meals. The Court found five instances where an amount for Mr. Gebhardt's meal during the week of trial also included the cost of Ms. Esperance's meal. (Doc. 125-1, p. 73.) There is no indication how much was spent on each meal. Thus, half of the amount from each of those five entries will be deducted, for a total of $78.76.

In the Taxation of Costs, the Clerk of Court awarded Plaintiff a total of $5,917.34. (Doc. 141.) (That amount includes $88.80 for The Little Print Shop invoice.) Thus, in order to avoid double recovery, the Court will deduct $5,917.34 from the expenses requested by Plaintiff as part of the attorney fee request pending before the Court.

The remaining costs and expenses requested for out-of-state counsel are listed in attachments to Mr. Gebhardt's declaration, and the Court finds them reasonable. (Doc. 125-1, pp. 71-73, 78, and 83.) The total award for costs and expenses for out-of-state counsel is $4,127.78 ($10,901.94 requested in the initial fee petition minus $778.06 for The Little Print Shop invoice, $78.76 for Ms. Esperance's meals, and $5,917.34 for the costs already taxed by the Clerk of Court).

Defendant does not object to local counsel's costs and expenses in the amount of $1,490.05 ($1,323.05 in initial petition and $167.00 in the supplemental petition), and the Court finds them reasonable.

For the reasons set forth above, the total amount of costs and expenses awarded by this Court is $5,617.83 ($4,127.78 for out-of-state counsel plus $1,490.05 for local counsel).

**G. Interest on Attorney Fees**

Plaintiff requests interest on attorney fees from the date she first filed for an award of fees. The Eighth Circuit has held that where the allowance of fees is within the discretion of the court, post-judgment interest on an award of attorney fees runs from the date that the district court enters judgment finding that the prevailing party is entitled to attorney fees, even though the fees are not yet quantified. *Jenkins by Agyei v. State of Missouri*, 931 F.2d 1273, 1275–76 (8th Cir. 1991). Today the Court has held that Plaintiff is entitled to attorney fees, and the amount of the fees

awarded has been set. Thus, the attorney fee award starts bearing interest today, and Plaintiff is not entitled to interest on fees before this date. Accordingly,

**IT IS ORDERED** that Plaintiff's motions for attorney fees are granted to the extent set forth in this Order. (Doc. 124 and Doc. 135.) The Court awards attorney fees to Plaintiff in the amount of $387,570.53, and expenses in the amount of $5,617.83, for a total award of $393,188.36.

Dated this 15th day of January, 2025.

BY THE COURT:

Lawrence L. Piersol
United States District Judge